**Jayantha Edirsinghe KANKAMALAGE, Petitioner,**

v.

**IMMIGRATION and NATURALIZATION SERVICE, Respondent.**

No. 02–71415.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 9, 2003.

Filed July 8, 2003.

United States, Fed. R.App. P. 43(c)(2).

---

\* John Ashcroft is substituted for his predecessor, Janet Reno, as Attorney General of the

Robert B. Jobe, San Francisco, CA, for the petitioner-appellant.

Ethan B. Kanter and Earle B. Wilson, United States Department of Justice, Office of Immigration Litigation, Civil Division, Washington, D.C., for the respondent-appellee.

Before BROWNING, B. FLETCHER, and SILVERMAN, Circuit Judges.

## OPINION

SILVERMAN, Circuit Judge.

In 1988, when petitioner Jayantha Kankamalage pleaded guilty to robbery, a conviction for that offense did not categorically disqualify him from consideration for asylum. In 1990, a new regulation was promulgated that changed that; he became categorically ineligible for a discretionary grant of asylum. In accordance with *INS v. St. Cyr*, 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001), we hold that the 1990 regulation cannot be applied retroactively to categorically exclude Kankamalage from consideration for asylum.

## I. Background

Kankamalage, a citizen of Sri Lanka, entered the United States in 1982. He pleaded guilty to robbery in 1988 and was sentenced to two years in prison. After serving one year in prison, Kankamalage was released and turned over to the INS. The INS initiated deportation proceedings against him in March 1989 with an Order to Show Cause charging that Kankamalage overstayed his nonimmigrant visitor visa, and therefore, was subject to deportation under former INA § 241(a)(2), 8 U.S.C. § 1251(a)(2). Kankamalage filed an application for asylum and withholding of deportation.

In a November 1991 hearing before the Immigration Judge, Kankamalage conceded deportability for remaining in the United States longer than permitted. The IJ denied withholding of deportation, ruling that Kankamalage had not established that persecution was clearly probable if he were to be returned to Sri Lanka. As for asylum, the IJ found that Kankamalage was, indeed, statutorily eligible for that relief: Kankamalage had shown a well-founded fear of future persecution; his 1988 robbery conviction did not disqualify him. However, as a matter of discretion, the IJ denied asylum to Kankamalage, citing Kankamalage's conviction and prior drug use.

Kankamalage appealed the IJ's decision to the Board of Immigration Appeals. Almost eight years later, the BIA dismissed the appeal on grounds different from those relied on by the IJ. Kankamalage petitioned this Court for review of the BIA's decision in September 1999. The INS conceded that the BIA applied the incorrect legal standards in its decision and moved to remand the case to the BIA. In May 2000, we remanded Kankamalage's case to the BIA.

On remand, the BIA recognized the error in its earlier decision, but again dismissed the appeal on different grounds. The BIA analyzed Kankamalage's 1988 robbery conviction and concluded that

Kankamalage had been convicted of a "particularly serious crime," and therefore, that he was statutorily ineligible for withholding under 8 U.S.C. § 1253(h)(2)(B) (1994) and ineligible for asylum under 8 C.F.R. § 208.13(c)(2)(i)(A) (2002).[1]

■ At the time Kankamalage pleaded guilty to robbery in 1988, a conviction for a particularly serious crime did not bar a grant of asylum. Back then, the INS regulations allowed the INS to exercise its discretion by weighing a number of equitable factors, none of which was controlling. *Yang v. INS*, 79 F.3d 932, 935 (9th Cir. 1996). Therefore, a conviction for a particularly serious crime was only one factor considered in the exercise of discretion. *See id.* However, the INS promulgated regulations that took effect on October 1, 1990, that added categorical bars to asylum for aliens in certain categories. *Id.* One of these barred asylum for aliens convicted of a particularly serious crime. That regulation provides the following:

> *Mandatory denials.* ... An immigration judge or asylum officer shall not grant asylum to any applicant ... if the alien[, h]aving been convicted by a final judgment of a particularly serious crime in the United States, constitutes a danger to the community.[2]

8 C.F.R. § 208.13(c)(2)(i)(A) (2002). This is the regulation applied in Kankamalage's case that is at the center of this appeal. Kankamalage petitions this court for review of the BIA's decision and argues that application in his case of this regulation is impermissibly retroactive.

## II. Jurisdiction and Standard of Review

Because Kankamalage was placed in deportation proceedings before April 1, 1997, and a final order of deportation was entered after October 30, 1996, the Illegal Immigration Reform and Immigrant Responsibility Act's ("IIRIRA") transitional rules apply. *Hose v. INS*, 180 F.3d 992, 994 (9th Cir.1999). We have jurisdiction to review final orders of deportation under 8 U.S.C. § 1105a(a), *repealed by* Section 309(c)(4) of IIRIRA, Pub.L. No. 104–208, 110 Stat. 3009–546 (Sept. 30, 1996).

■ When the BIA conducts a de novo review of the IJ's decision, rather than adopting the IJ's decision as its own, we review the BIA's decision. *Salazar–Paucar v. INS*, 281 F.3d 1069, 1073 (9th Cir.2002). We review the BIA's determination of purely legal questions regarding the Immigration and Nationality Act de novo. *Chowdhury v. INS*, 249 F.3d 970,

1. In its decision dismissing Kankamalage's appeal, the BIA cited 8 U.S.C. §§ 1158(b)(2)(a)(ii) and 1251(b)(3)(B)(ii) as the statutory sections that bar asylum and withholding for aliens convicted of a particularly serious crime. The government concedes on appeal that these statutory provisions apply on immigration proceedings that commence on or after April 1, 1997, and therefore, do not apply to Kankamalage's case which commenced in 1989. The government asserts that the appropriate legal provisions that apply in this case and that were actually applied by the BIA are 8 U.S.C. § 1253(h)(2)(B) (1994), the statutory provision that bars a grant of withholding for conviction of a particularly serious crime, and 8 C.F.R. § 208.13(c)(2)(i)(A) (2002), the regula-

tion that mandates denial of asylum for conviction of a particularly serious crime. Kankamalage does not raise this issue in his opening or reply brief, but rather concedes that 8 C.F.R. § 208.13(c)(2)(i)(A) (2002) was applied in his case. He argues that the application of this regulation is impermissibly retroactive. Because the parties agree on the legal provisions applied in this case, we accept their assertions.

2. Once the INS makes a finding that an offense constitutes a particularly serious crime, a separate determination of danger to the community is not required. *Ramirez–Ramos v. INS*, 814 F.2d 1394, 1397 (9th Cir.1987).

972 (9th Cir.2001). The BIA's interpretation of immigration laws is entitled to deference. *Id.* However, we are not obligated to accept an interpretation clearly contrary to the plain and sensible meaning of the statute. *Id.* We must first determine if there is any ambiguity in the statute using traditional tools of statutory interpretation. *Id.* (citing *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843 n. 9, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)). Only after we determine that a statute is ambiguous do we defer to the agency's interpretation. *Id.*

## III. Discussion

 Under *Landgraf v. USI Film Prods.*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), determination of whether a regulation or statute is impermissibly retroactive requires a two-step analysis. First, we must determine whether the statute or regulation clearly expresses that the law is to be applied retroactively. *Landgraf*, 511 U.S. at 280, 114 S.Ct. 1483. If it does, then the statute or regulation may be applied as such. *Id.* However, if the statute or regulation does not contain an express command that it be applied retroactively, we must go to the second step which requires us to determine whether the statute or regulation would have a retroactive effect. *Id.*

### A. *Clear Expression of Retroactivity*

 The standard for finding that a statute or regulation unambiguously directs retroactive application is a demanding one. *St. Cyr*, 533 U.S. at 316, 121 S.Ct. 2271. The language must be "so clear that it could sustain only one interpretation." *Id.* at 316–17, 121 S.Ct. 2271.

The regulation at issue expressly states that it applies to asylum *applications* filed before April 1, 1997. 8 C.F.R. § 208.13(c)(2)(i)(A) (2002). However, the regulation does not clearly express that the regulation also applies to *convictions* rendered before the effective date of the regulation (October 1, 1990). *See St. Cyr*, 533 U.S. at 317–318, 121 S.Ct. 2271.

The government argues that the regulation "unambiguously" applies retroactively because it could not be applied to an alien who filed an application before April 1, 1997 *absent* a conviction predating April 1, 1997. This is incorrect. Due to the pace at which many asylum cases are resolved, it is entirely possible that an asylum application filed before April 1, 1997 may not be resolved until many years later. If the applicant is convicted of a particularly serious crime while the application is pending, the regulation could apply to the applicant.

Because 8 C.F.R. § 208.13(c)(2)(i)(A) (2002) does not clearly express that it is to be applied retroactively to convictions rendered prior to the regulation's effective date (October 1, 1990), we must proceed to the second step in the *Landgraf* retroactivity analysis and determine whether application of the regulation has an impermissible retroactive effect on aliens who, like Kankamalage, were convicted by plea agreement before the effective date of the regulation. *St. Cyr*, 533 U.S. at 320, 121 S.Ct. 2271.

### B. *Retroactive Effect*

 "A [regulation] has retroactive effect when it 'takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past.'" *St. Cyr*, 533 U.S. at 321, 121 S.Ct. 2271 (citations omitted). "[T]he judgment whether a particular [regulation] acts retroactively 'should be informed and guided by "familiar considerations of fair notice, reasonable reliance, and settled expectations."'" *Id.*

Kankamalage asserts that application of the new regulation that mandates denial of asylum for a conviction of a particularly serious crime "attaches a new disability, in respect to transactions or considerations already past." We agree and find the Supreme Court's decision in *St. Cyr* controlling.

St. Cyr, an alien, pleaded guilty to selling a controlled substance in violation of Connecticut law in March 1996. *St. Cyr,* 533 U.S. at 293, 121 S.Ct. 2271. This conviction rendered St. Cyr deportable. *Id.* Under the law applicable at the time of St. Cyr's guilty plea and conviction, he would have been eligible for a waiver of deportation at the discretion of the Attorney General. *Id.* However, removal proceedings were not initiated against St. Cyr until April 10, 1997, after both the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") and IIRIRA became effective. *Id.* Under AEDPA and IIRIRA, waiver of deportation under § 212(c) was no longer available. *Id.* The Supreme Court held that application of IIRIRA and AEDPA in St. Cyr's case had a severe and impermissible retroactive effect. *St. Cyr,* 533 U.S. at 325–26, 121 S.Ct. 2271.

The Supreme Court noted that "[t]here can be little doubt that, as a general matter, alien defendants considering whether to enter into a plea agreement are acutely aware of the immigration consequences of their convictions." *Id.* at 322, 121 S.Ct. 2271. The Supreme Court held that "IIRIRA's elimination of any possibility of § 212(c) relief for people who entered into plea agreements with the expectation that they would be eligible for such relief clearly 'attaches a new disability, in respect to

transactions or considerations already past.'" *Id.* at 321, 121 S.Ct. 2271 (quotations and citations omitted).

The present case is like *St. Cyr.* At the time Kankamalage pleaded guilty, he was eligible for asylum. However, when the BIA eventually ruled on Kankamalage's asylum application, it applied a subsequently enacted regulation that prohibited granting asylum. The application of the new regulation thus "attaches a new disability, in respect to transactions and considerations already past."

The government argues that even if the regulation eliminates the grant of asylum, it is not impermissibly retroactive because an asylum grant is purely discretionary. However, in *St. Cyr* the Supreme Court explained:

> There is a clear difference, for the purposes of retroactivity analysis, between facing possible deportation and facing certain deportation.... Prior to AEDPA and IIRIRA, aliens like St. Cyr had a significant likelihood of receiving § 212(c) relief. Because [St. Cyr], and other aliens like him, almost certainly relied upon that likelihood in deciding whether to forgo their right to a trial, the elimination of any possibility of § 212(c) relief by IIRIRA has an obvious and severe retroactive effect.

*Id.* at 325, 121 S.Ct. 2271.[3] Therefore, the fact that an asylum grant is discretionary does not change the retroactivity analysis.

*United States v. Velasco–Medina,* 305 F.3d 839(9th Cir.2002) is not to the contrary. In 1996, Velasco–Medina pleaded guilty to second degree burglary and was

---

**3.** The government also argues that there is no impermissible retroactive effect in applying the new regulation to Kankamalage because the Attorney General's regulations have incorporated the particularly serious crime exception as a *potential* bar to asylum since at least

1983. However, to reiterate, the Supreme Court stated in *St. Cyr,* "[t]here is a clear difference ... between facing *possible* deportation and facing *certain* deportation." *St. Cyr,* 533 U.S. at 325, 121 S.Ct. 2271 (emphasis added).

sentenced to one year in prison. Under the immigration laws in effect at that time, his conviction was not an aggravated felony because the sentence imposed was less than five years. Consequently, Velasco–Medina's guilty plea did not make him deportable. However, he had notice that aggravated felons were not eligible for § 212(c) relief. In 1997, the definition of "aggravated felony" changed; the prison sentence necessary to trigger an aggravated felony was reduced from five years to one year. The new law also created a new form of relief called "cancellation of removal." Cancellation of removal is not available to aggravated felons, just as discretionary relief under § 212(c) was not. *Id.* at 843. On these facts, we held that Velasco–Medina's deportation had not violated his due process rights under *St. Cyr*:

> The considerations that supported maintaining § 212(c) relief for St. Cyr are absent for Velasco–Medina. At the time of his guilty plea, St. Cyr's aggravated felony conviction rendered him deportable but qualified him for § 212(c) relief; he enjoyed "vested rights acquired under existing laws." [*St. Cyr*, 533 U.S. at 321, —— S.Ct. at ——]. By contrast, Velasco–Medina was never eligible for discretionary relief under § 212(c) because his guilty plea did not render him deportable; unlike St. Cyr, he never possessed "vested rights acquired under existing laws." Thus, Velasco–Medina could not have developed the sort of settled expectations concerning § 212(c) relief that informed St. Cyr's plea bargain and that animated the *St. Cyr* decision.
>
> * * *
>
> Velasco–Medina's settled expectations must have been shaped by the then-current legal landscape. ... Here, AEDPA provided Velasco–Medina with fair notice that discretionary relief under § 212(c) would be unavailable in the

event his conviction was reclassified as an aggravated felony. To the extent he anticipated the continued availability of § 212(c) relief after his guilty plea, his expectations were neither reasonable nor settled under *St. Cyr*.

*Velasco–Medina,* 305 F.3d at 849–850.

Kankamalage's situation is more like St. Cyr's than Velasco–Medina's. At the time he pleaded guilty, Kankamalage, unlike Velasco–Medina, *was* deportable, just as St. Cyr was. And his guilty plea left him qualified to apply for discretionary relief, just as St. Cyr's did. A subsequent change in the law then rendered Kankamalage, like St. Cyr, ineligible for such relief.

## IV. Conclusion

We grant the petition and remand the case to the BIA for further proceedings consistent with this opinion. In doing so, we emphasize that the BIA is not prohibited from taking into account Kankamalage's robbery conviction when it decides whether or not to grant asylum as a matter of discretion. We hold only that the conviction does not *automatically* disqualify Kankamalage from discretionary consideration.

PETITION FOR REVIEW GRANTED AND REMANDED.