Guillermo **OLEA–REYES,** Petitioner,

v.

Alberto R. **GONZALES,** Attorney General, Respondent.

No. 03–73531.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 14, 2006.

Filed April 20, 2006.

---

Gary Finn, Esq., Law Offices of Gary Finn, Indio, CA, for Petitioner.

District Director, Office of the District Counsel, Department of Homeland Security, San Diego, CA, Ronald E. LeFevre, Chief Counsel Office of the District Counsel, Department of Homeland Security, San Francisco, CA, M. Jocelyn Lopez Wright, Esq., Sarah Maloney, Esq., DOJ— U.S. Department of Justice, Civil Div./Office of Immigration Lit., Washington, DC, for Respondent.

Before: B. FLETCHER, FERGUSON, and CALLAHAN, Circuit Judges.

## MEMORANDUM *

Guillermo Olea–Reyes ("Olea") petitions for review of an order of the Board of Immigration Appeals (BIA) affirming without opinion the immigration judge's (IJ) order of removal. The IJ found Olea inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I) as an intending immigrant without valid documents, and under 8 U.S.C. § 1182(a)(6)(C)(i) for willfully misrepresenting a material fact to procure admission into the United States. The IJ also concluded that Olea was an arriving alien statutorily ineligible to apply for voluntary departure. *See* 8 U.S.C. § 1229c(a)(4). Olea concedes that he is removable under § 1182(a)(7)(A)(i)(I), but contends that he is not removable under § 1182(a)(6)(C)(i) because he promptly retracted his initial claim to United States citizenship. We agree and grant the petition for review with respect to this claim. We deny the petition as to Olea's second claim, that he is eligible to apply for voluntary departure.

## I.

Since the parties are familiar with the facts, we do not recite them in detail. Olea, a citizen of Guatemala, was detained on November 4, 2000, at the San Ysidro port of entry as he sought to reenter the United States after a two-week trip to Mexico to visit his father. In response to a question by the primary inspector, Olea indicated he was a United States citizen. When asked for documentation of this, Olea testified that he told the inspector he had a work permit. The primary inspector moved Olea into secondary inspection,

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this Circuit except as provided by Ninth Circuit Rule 36–3.

where a work permit, a California driver's license, and a false Mexican birth certificate were found in Olea's pocket. The INS classified Olea as an arriving alien and concluded that he was inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I) and (a)(6)(C)(ii).[1] Because Olea was found to have a credible fear of being removed to Guatemala, he was paroled into the United States for the purpose of being placed in 8 U.S.C. § 1229a removal proceedings. At the removal hearing, the IJ denied Olea voluntary departure and found him to be inadmissible under both § 1182(a)(7)(A)(i)(I) and (a)(6)(C)(i).

Since the BIA summarily affirmed the IJ pursuant to 8 C.F.R. § 1003.1(e)(4), we review the IJ's decision as the final agency determination. *Lanza v. Ashcroft*, 389 F.3d 917, 925 (9th Cir.2004). We review factual findings for substantial evidence, *Aruta v. INS*, 80 F.3d 1389, 1393 (9th Cir.1996), and questions of law de novo, *Montero–Martinez v. Ashcroft*, 277 F.3d 1137, 1145 (9th Cir.2002). With respect to the immigration laws, we look to the plain meaning of the statute and give effect to that meaning where fairly possible. *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Where a statute is ambiguous, we defer to the interpretation of the agency charged with administering the statute, as long as its interpretation is not "clearly contrary to the plain and sensible meaning of the statute," *Kankamalage v. INS*, 335 F.3d 858, 862 (9th Cir.2003), or in conflict with this Court's precedent, *Melkonian v. Ashcroft*, 320 F.3d 1061, 1065 (9th Cir.2003).

## II.

■ Regarding Olea's first claim, we conclude that he is not removable under 8 U.S.C. § 1182(a)(6)(C)(i) because he promptly retracted his initial claim to United States citizenship. As an initial matter, although Olea is already removable under § 1182(a)(7)(A)(i)(I), it remains relevant for this Court to address his removability under § 1182(a)(6)(C)(i) since the latter provision can establish permanent inadmissibility to the United States. *See Matter of Y–G–*, 20 I. & N. Dec. 794, 797, 1994 WL 213250 (BIA 1994). Olea retains the justiciable interest on appeal of not being permanently barred from the United States, unless a waiver is obtainable.[2] Like the immigration courts, we closely scrutinize the factual basis for the IJ's determination that an applicant is inadmissible under § 1182(a)(6)(C)(i), "since such a finding may perpetually bar the applicant from admission." *Y–G–*, 20 I. & N. Dec. at 797; *see* Foreign Affairs Manual (FAM), 22 C.F.R. § 40.63 n. 1.3 (the State Department's implementing regulations for § 1182(a)(6)(C)(i)).

Section 1182(a)(6)(C)(i) provides: "Any alien who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided under this chapter is inadmissible." A willful misrepresentation is a misrepresentation that is deliberate, voluntary, and knowingly false. *Forbes v. INS*, 48 F.3d 439, 442 (9th Cir.1995); FAM, 22 C.F.R. § 40.63 n. 5.1. (providing that will-

---

**1.** Section 1182(a)(6)(C)(ii) provides for inadmissibility on the basis of falsely claiming United States citizenship. In his Notice to Appear, Olea was charged under § 1182(a)(6)(C)(i), which provides for inadmissibility on the basis of willfully misrepresenting a material fact.

**2.** Title 8 U.S.C. § 1182(i)(1) provides relief to certain aliens from the permanent operation of § 1182(a)(6)(C)(i). Essentially, an alien who can show "extreme hardship" to a U.S. citizen family member may be granted a waiver of inadmissibility at the discretion of the Attorney General.

fully means "knowingly and intentionally, as distinguished from accidentally, inadvertently, or in an honest belief that the facts are otherwise … it must be determined that the alien was fully aware of the nature of the information sought and knowingly, intentionally, and deliberately made an untrue statement").

A critical factor to consider is whether the alien timely retracts his claim, which serves to excuse the misrepresentation by showing that the alien lacked the requisite intent to make a false statement. *Cf. Llanos–Senarillos v. United States*, 177 F.2d 164, 165 (9th Cir.1949) ("If the witness withdraws the false testimony of his own volition and without delay, the false statement and its withdrawal may be found to constitute one inseparable incident out of which an intention to deceive cannot rightly be drawn."). Accordingly, the State Department regulations provide that a "timely retraction will serve to purge a misrepresentation and remove it from further consideration as a ground for INA § 212(a)(6)(C)(i) ineligibility." FAM, 22 C.F.R. § 40.63 n. 4.6.

In this case, it is not disputed that Olea initially claimed to be a United States citizen. Nor is it disputed that a timely retraction of this claim means that Olea cannot be found inadmissible under § 1182(a)(6)(C)(i). The central question before this Court is thus a factual one—did a retraction take place? Olea provides clear, consistent testimony that it did. Olea accurately testified that he told the primary inspector he was a United States citizen. He explained that he responded incorrectly because he did not understand the inspector's question, which Olea testified was asked in English. Olea also explained that he corrected his mistake when the inspector asked Olea for documentation of his claimed citizenship, by promptly disclosing that he had a work permit. Olea consistently testified that he never

showed the work permit to the primary inspector because he was escorted into an office, where secondary inspectors took his documents. Olea also accurately testified that the documents he had on him at the time included his work permit, a California driver's license, and a false Mexican birth certificate. Olea further explained that, after seven or eight hours had passed, he provided a sworn statement formally attesting to the fact that he had initially claimed to be a United States citizen.

The government sets forth no evidence to contradict Olea's testimony. The primary inspector's report states that "OLEA declared him sel fas [sic] United States citizen" and "OLEA claimed that he forgot his picture identification and tried to abscond in the secondary office." The secondary inspector's report states that Olea "claimed birth in Chino, California," and immigration officers conducted a "secondary officer search," which produced Olea's work permit and "a conterfied [sic] mexican birth certificate." The formal report prepared by the INS states that Olea "admitted his true identity and nationality" during the secondary inspection. These reports are all consistent with Olea's testimony that he disclosed to the primary inspector that he had a work permit, and none of them contradicts this testimony except by their silence. In short, the record lacks any evidence to refute Olea's clear, consistent testimony that he promptly told the primary inspector he had a work permit.

Since there is no factual basis upon which to conclude that Olea failed to retract, the IJ attempts to support his decision by discrediting Olea's testimony and by mis-characterizing the evidence. The IJ misleadingly states that Olea's testimony contradicts the sworn statement he provided at the time of his detention. In fact, Olea's testimony and his sworn statement

are fully consistent. The IJ also concludes that no retraction took place because "it was not until eight hours later that [Olea] presented the employment authorization document." This statement is simply incorrect.[3] Further, this statement does not even logically refute Olea's central claim that he retracted his initial claim to citizenship by *orally admitting* to having a work permit. The IJ's opinion fails to address, and thus fails to undermine, Olea's unambiguous testimony that he never presented his permit to the primary inspector because he was escorted into secondary inspection, but that he did tell the inspector about his work permit, which in and of itself was the retraction.

Nor did the IJ ever make an adverse credibility determination regarding Olea's testimony. Instead of undertaking a credibility analysis, the IJ cast general aspersions on Olea's testimony, stating that "[Olea's] explanation that he did not know what was being asked of him must be examined in light of the fact that the respondent has been in this country for 13 years." The implication of the IJ's opinion is that, because Olea is "a somewhat sophisticated gentleman" who has filed income tax returns and purchased a home, he cannot have been telling the truth about misunderstanding the primary inspector's question, and thus must have knowingly and deliberately claimed United States citizenship.

The IJ's implied discrediting of Olea's testimony violates the Ninth Circuit rule that implicit credibility determinations are not proper. *Kataria v. INS*, 232 F.3d 1107, 1113 (9th Cir.2000). Moreover, this Court has repeatedly held that speculative remarks cannot form the basis of an adverse credibility determination or a denial of the applicant's claim. *E.g., Bandari v.*

*INS*, 227 F.3d 1160, 1167–68 (9th Cir. 2000). The IJ speculated that Olea is "a somewhat sophisticated gentleman" who has lived in the United States for thirteen years, yet the rule in this Circuit is that an IJ may not base his opinion on "personal conjecture" as to how someone in the applicant's situation would have conducted himself. *See Karouni v. Gonzales*, 399 F.3d 1163, 1176 (9th Cir.2005). Additionally, any reasons for doubting an applicant's credibility must be specific and cogent—generalized observations that fail to specify how the applicant was evasive or contradicted himself are insufficient. *Garrovillas v. INS*, 156 F.3d 1010, 1013 (9th Cir.1998).

The IJ's speculations are also thoroughly contradicted by the record, which reflects that Olea understood little English. For example, Olea's tax forms were submitted by a professional preparer, not by Olea; the language spoken in Olea's household is Spanish; Olea's sworn statement at San Ysidro was prepared in Spanish; the government provided Olea with the Spanish version of the M–444 form on credible fear interviews; Olea's credible fear interview was conducted entirely in Spanish; and Olea utilized a Spanish interpreter throughout the removal proceedings.

Olea has provided clear, consistent testimony that he claimed United States citizenship only because he misunderstood the primary inspector's question, and that he promptly corrected his mistake by advising the inspector that he had a work permit. The government has not presented any evidence to refute Olea's testimony. And the IJ relied on impermissible and unfounded conjecture in attempting to discredit this testimony. Under these facts, we conclude the record lacks substantial

---

**3.** There is no evidence that eight hours elapsed before Olea presented his work permit to the immigration officers. Rather, what

occurred "eight hours later" was that Olea signed a formal, written statement acknowledging his initial false claim.

evidence to support the IJ's determination that Olea failed to retract his initial claim to United States citizenship. We therefore grant Olea's petition with respect to his claim that he is not removable under § 1182(a)(6)(C)(i).

## III.

■ Olea's second claim, that the IJ erroneously classified him as an arriving alien, is without merit.

Title 8 U.S.C. § 1229c(a)(4) denies voluntary departure to "an alien who is arriving in the United States" and who is placed in removal proceedings. The statute does not define what it means to be "an alien who is arriving in the United States," so we defer to the administrative agency's interpretation of this term, as long as the interpretation is not "clearly contrary to the plain and sensible meaning of the statute." *Kankamalage*, 335 F.3d at 862. The Department of Justice (DOJ) regulation provides in relevant part:

> The term arriving alien means an applicant for admission coming or attempting to come into the United States at a port-of-entry, or an alien seeking transit through the United States at a port-of-entry, or an alien interdicted in international or United States waters and brought into the United States by any means, whether or not to a designated port-of-entry, and regardless of the means of transport. An arriving alien remains such even if paroled pursuant to section 212(d)(5) of the Act.

8 C.F.R. § 1001.1(q). We accord deference to the preceding definition, as it is not clearly contrary to the plain and sensible meaning of 8 U.S.C. § 1229c(a)(4).

Where a possible ambiguity exists in an administrative regulation, we accord "controlling weight to an agency's interpretation of its own regulations," unless the interpretation "is plainly erroneous or inconsistent with the regulation." *Ruangswang v. INS*, 591 F.2d 39, 43 (9th Cir. 1978) (internal quotation marks and citations omitted). Here, the IJ's interpretation of the regulation defining "arriving alien" was neither plainly erroneous nor inconsistent with the regulatory text. The relevant section of the text provides that an arriving alien is "an applicant for admission coming or attempting to come into the United States at a port-of-entry." 8 C.F.R. § 1001.1(q). Olea's arrival at San Ysidro falls under the plain terms of the regulation—Olea was an alien who was both attempting to enter the United States at a port of entry *and* applying for admission. The second requirement is critical—the DOJ clearly did not intend for every alien presenting himself at a port of entry to be classified as an "arriving alien." Those aliens who are seeking to enter the United States, but who are not at the same time seeking "admission"—a legal status not synonymous with "entry" [4]—are not to be considered "arriving." What distinguishes such aliens from Olea is the fact that the former possess on their record a valid "admission" to the United States— they have legal status in the country. Olea, by contrast, though residing illegally in the United States for many years, never gained legal "admission." Therefore, when he presented himself at San Ysidro on November 4, 2000, he continued to be an "applicant for admission" to the United States, and thus an arriving alien. We therefore uphold the IJ's determination that Olea is an arriving alien statutorily ineligible to apply for voluntary departure.

For the foregoing reasons, the petition for review is **GRANTED** in part and **DENIED** in part.

---

**4.** Title 8 U.S.C. § 1101(a)(13)(A) provides: admission is "lawful entry ... into the United States after inspection and authorization by an immigration officer."

CALLAHAN, Circuit Judge, concurring in part and dissenting in part.

In his removal proceedings, Olea–Reyes had the burden of proving that he was "clearly and beyond doubt ... not inadmissible" as charged. 8 U.S.C. § 1229a(c)(2)(A). Based on a factual adverse credibility determination, the IJ concluded that Olea–Reyes did not meet his burden of proof. This court must uphold the agency's factual findings "unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *Chebchoub v. INS*, 257 F.3d 1038, 1042 (9th Cir.2001) (explaining that the substantial evidence standard is highly deferential to the Board of Immigration Appeals). Because a close examination of the record does not compel a result contrary to that reached by the IJ, Olea–Reyes has not met his burden of proving by substantial evidence that he clearly and beyond a doubt is not inadmissible to the United States. Accordingly, while I concur with Parts I and III of the memorandum disposition, I dissent from Part II.

The IJ's conclusion—that Olea–Reyes withheld his true country of citizenship by saying that he was a United States citizen, and did not timely retract his false statement of United States citizenship—is supported by substantial evidence, including Olea–Reyes's contradictory testimony and the totality of evidence before the immigration court.

Seven or eight hours after his arrival at the San Ysidro port-of-entry, Olea–Reyes was interviewed in Spanish by Officer Ibarguren. The interview was transcribed into a written report and was read to Olea–Reyes in Spanish. Olea–Reyes signed the report in the presence of a witness, affirming that his answers to Officer Ibarguren's questions were true and correct to the best of his knowledge. In response to Officer Ibarguren's question "Did you say you were born somewhere in the United States?" Olea–Reyes responded "I said to the officer that I was a United States citizen." Officer Ibarguren then asked "Do you think you are a United States citizen?" to which Olea–Reyes answered "no." Olea–Reyes also responded "no" to Officer Ibarguren's final question "Do you have any questions or is there anything else you would like to add?"

At the immigration court hearing, Olea–Reyes was questioned by his attorney, the government's attorney, and the IJ. When his attorney asked him "Why did you say you were a U.S. citizen if you're not?" Olea–Reyes answered "Because I didn't understand the lady exactly what she was trying to tell me." The IJ's conclusion that this statement contradicted Olea–Reyes's earlier statement to Officer Ibarguren makes sense. Olea–Reyes's testimony before the immigration court about being confused is inconsistent with his earlier statement claiming United States citizenship because Olea–Reyes never expressed any confusion to Officer Ibarguren about his conversation with the initial immigration inspector when he answered Officer Ibarguren's questions or when Officer Ibarguren gave him the opportunity to provide a retraction or explain a supposed earlier retraction. His statement to the immigration court also contradicts his earlier statement to Officer Ibarguren because making a false claim to citizenship does not logically flow from any confusion Olea–Reyes says he encountered at the border. In other words, confusion is incongruous with a false statement claiming United States citizenship, which Olea–Reyes unequivocally admitted to making. These contradictory statements support the IJ's adverse credibility determination and his conclusion that Olea–Reyes was not confused at the border and did not offer a timely retraction of his statement of United States citizenship.

In making his adverse credibility determination, the IJ also relied on other evidence in the record. Specifically, Olea–Reyes did not offer his United States work papers to the primary or secondary inspector; instead, they were only discovered at the secondary inspection when Olea–Reyes was searched. Additionally, he was carrying a bogus Mexican birth certificate that was discovered during the search, suggesting that he understood the meaning and importance of citizenship. The IJ also noted that Olea–Reyes appeared to be a somewhat sophisticated man and that his explanation that he did not know what he was saying or doing at the port-of-entry belied his demeanor. *See Jibril v. Gonzales*, 423 F.3d 1129, 1137 (9th Cir.2005) (explaining that special deference to a credibility determination based on demeanor is proper because the IJ has the opportunity to make a first-person evaluation of all of the subtly conveyed factors that can be evidence of a petitioner's credibility).

Although not mentioned in the IJ's opinion, further evidence in the record supports the conclusion that Olea–Reyes was being untruthful when he testified before the immigration court. Olea–Reyes testified that he had his California drivers licence with him at the port-of-entry, but this is inconsistent with both the initial immigration inspector's report that Olea–Reyes claimed that he forgot his picture identification and the fact that no drivers license was ever presented to the immigration officials or found on him when he was searched.

The evidence before the immigration court, including (1) Olea–Reyes's unrefuted sworn statement to Officer Ibarguren that he told the initial immigration inspector that he was a United States citizen and his failure to qualify this statement in any way to Officer Ibarguren when given the opportunity to do so, (2) Olea–Reyes's failure to provide his United States work papers to the primary or secondary immigration inspector and his possession of an admittedly bogus Mexican birth certificate at the port-of-entry, and (3) Olea–Reyes's contradictory testimony, demeanor and appearance before the IJ, provide specific and cogent reasons supporting the IJ's credibility determination. *See Malhi v. INS,* 336 F.3d 989, 993 (9th Cir.2003) (requiring agency to provide specific and cogent reasons for disbelieving petitioner's testimony). The evidence, examined in its entirety, does not compel a reasonable adjudicator to concluded that Olea–Reyes's testimony to the IJ was truthful. Therefore, I would uphold the IJ's adverse credibility finding and his conclusion that Olea–Reyes did not timely retract his statement of United States citizenship, and I would deny the petition for review in its entirety.