**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

PABLO MENDEZ-MENDEZ,
                              *Petitioner,*

v.

MICHAEL B. MUKASEY,* Attorney
General,

                              *Respondent.*

No. 06-70851

Agency No.
A92-698-658

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
November 6, 2007—Honolulu, Hawaii

Filed May 8, 2008

Before: Diarmuid F. O'Scannlain, A. Wallace Tashima, and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Tashima

---

*Michael B. Mukasey is substituted for his predecessor, Alberto R. Gonzales, as Attorney General of the United States, pursuant to Fed. R. App. P. 43(c)(2).

## COUNSEL

Fernando L. Cosio, Honolulu, Hawaii, for the petitioner.

Norah Ascoli Schwarz, Civil Division, U.S. Department of Justice, Washington, D.C., for the respondent.

## OPINION

TASHIMA, Circuit Judge:

Pablo Mendez-Mendez ("Mendez"), a native and citizen of Mexico, petitions for review of a decision of the Board of Immigration Appeals ("Board" or "BIA"), dismissing his appeal from an Immigration Judge's ("IJ") order of removal. The Board concluded that the IJ did not abuse her discretion in denying Mendez's motion for a continuance, and that the IJ correctly concluded that Mendez did not qualify for the exception to inadmissibility found in 8 U.S.C. § 1182(a)(2)(A)(ii)(II). Accordingly, the Board dismissed Mendez's appeal.

We have jurisdiction pursuant to 8 U.S.C. § 1252(a), and we deny the petition.[1]

## BACKGROUND

Mendez became a lawful permanent resident of the United States on December 1, 1990. On September 8, 1995, Mendez pled guilty to one count of bribery of a public official, in violation of 18 U.S.C. § 201(b)(1)(A). The sentencing guideline range was zero to six months, and Mendez was sentenced to a three-month term of imprisonment.

In 2003, Mendez was returning to the United States from Mexico and applied for admission as a lawful permanent resident. In April 2004, Mendez was served with a Notice to Appear, charging him with inadmissibility for being an alien convicted of a crime involving moral turpitude, pursuant to 8 U.S.C. § 1182(a)(2)(A)(i)(I), based on his bribery conviction.

---

[1]The government contends that 8 U.S.C. § 1252(a)(2)(B)(ii) strips this court of jurisdiction to review an IJ's denial of a continuance. Mendez, however, does not seek review of the IJ's denial of his motion for a continuance. This contention, therefore, does not affect our jurisdiction.

A hearing was held before an IJ on May 4, 2004. Through his counsel, Fernando Cosio, Mendez contested his removal, sought termination of proceedings, and indicated his intent to seek waiver of inadmissibility pursuant to 8 U.S.C. § 1182(c) or (h), and cancellation of removal pursuant to 8 U.S.C. § 1229b. The IJ scheduled a hearing for September 29, 2004, and set a filing deadline of August 6, 2004, for any applications for relief.

Mendez subsequently hired a new attorney, Clifton Davis, and, on July 28, 2004, Davis filed a motion to substitute in as attorney of record and a request to continue the September hearing and to extend the deadlines to submit Mendez's applications for relief. Davis stated in the motion that Mendez retained him on July 28, 2004, and that Davis had been out of the country from mid-May to July 19. Davis sought a continuance in order to have time to prepare Mendez's case.

On August 3, 2004, the clerk of the immigration court sent Davis a form, stating that Davis' letter was being returned because Mendez already had counsel of record, Cosio. On August 17, 2004, Cosio filed a motion to withdraw as counsel for Mendez. Cosio stated that he met with Mendez on August 11, 2004, and Mendez asked him to withdraw his representation. Cosio attached a letter from Mendez, written in Spanish, with an English translation, in which Mendez requested that Cosio stop representing him, "effective today," August 11, 2004. Mendez further stated that his church would help him with his case. The IJ issued an order on August 17, 2004, stating that "[t]he individual hearing is **rescheduled** to August 27, 2004 . . . because [Mendez] missed the August 6, 2004 deadline to file the I-191 application for the 212(c) waiver, and therefore it is deemed waived. Motion to withdraw as counsel will be addressed on August 27, 2004."

On August 24, 2004, Davis again filed a motion to substitute in as attorney of record and to continue the hearing and filing dates. Davis stated that he did not receive the August 3,

2004, notice from the court denying his first motion because he had also taken "a ten day trip around the islands." Upon his return, he "learned personally from Attorney Cosio that Mr. Cosio had been acting as temporary counsel in the matter," and was told by Cosio that the merits hearing had been moved to August 27, 2004. Davis also attached a letter from Cosio, in which Cosio explained that, at the time Cosio filed his motion to withdraw, he did not know that Mendez had retained Davis.

On August 24, 2004, the IJ filed an order granting the motion for withdrawal and substitution of counsel, but she also filed an order denying the motion to continue the hearing and filing dates. The IJ held the hearing on August 27, 2004. Davis appeared on Mendez's behalf. Cosio also was present at the hearing.

Davis explained that he was hired by Mendez on July 28 and that he immediately sent in the motion to continue the hearing and filing dates. The motion was returned to him because Cosio was still the attorney of record, but Davis did not receive it until he returned from his trip around the islands. As soon as he returned, Davis contacted Cosio to learn what was happening with the case, and he contacted government counsel, who did not express any objection to a continuance. Davis also stated that he thought that Mendez would qualify for cancellation of removal because he had the seven years of continuous residence required by 8 U.S.C. § 1229b(a).

The IJ then turned to the issue of whether Mendez qualified for the so-called petty offense exception to inadmissibility found in 8 U.S.C. § 1182(a)(2)(A)(ii)(II), which exempts an alien who committed a crime involving moral turpitude if "the maximum penalty possible for the crime of which the alien was convicted . . . did not exceed imprisonment for one year and, if the alien was convicted of such crime, the alien was not sentenced to a term of imprisonment in excess of 6

months." 8 U.S.C. § 1182(a)(2)(A)(ii)(II). The focus of the discussion at the hearing was whether the phrase, "maximum penalty possible," referred to the maximum penalty under the sentencing guidelines, or the statutory maximum.

The IJ then allowed Cosio to speak. Cosio explained that Mendez "never signed my retainer agreement," and that he told Mendez and Mendez's son the possible types of relief for which Mendez could apply and the "urgency" of applying, but that Mendez was unable to pay the retainer fee. Cosio further stated that, when Mendez retained Davis on July 28, Mendez did not tell Davis that Cosio was the attorney of record. Cosio then explained that, when Mendez asked Cosio to withdraw his representation, Mendez told Cosio that his church would be helping him, and he did not let Cosio know that Davis had been retained.

The IJ issued an oral decision denying relief and ordering Mendez removed to Mexico. The IJ found that, although Mendez never signed a retainer agreement with Cosio, Cosio did explain to Mendez and Mendez's son "the urgency of filing the various applications" for relief. The IJ noted that Mendez's son had not filed a visa petition for Mendez, and that Mendez failed to file a Form I-191, which is an application for advance permission to return to the United States. *See* http://www.uscis.gov/files/form/i-191instr.pdf. Stating that it was inconvenient for the court to arrange for a Spanish interpreter,[2] and for the court to "give filing deadlines in writing as well as orally only to have them disregarded," and that the Form I-191 was readily available to Mendez, the court found that Mendez acted unreasonably in failing to file his applications in a timely manner. The IJ accordingly denied the motion for a continuance.

The IJ also found that Mendez's conviction for bribery was a crime involving moral turpitude and was not subject to the

---

[2]Mendez's Immigration Court hearing was held in Honolulu, Hawaii.

petty offense exception of 8 U.S.C. § 1182(a)(2)(A)(ii)(II). The IJ agreed with the government that the phrase, "maximum penalty possible," refers to the statutory maximum, not the guideline range. Because the statutory maximum for Mendez's bribery offense was fifteen years, the IJ held that he was ineligible for the petty offense exception. The IJ accordingly denied Mendez's motion for termination of the proceedings and ordered Mendez removed to Mexico. Mendez then filed an administrative appeal to the Board.

The BIA dismissed Mendez's appeal. It pointed out that Mendez was given more than three months in which to prepare his application for relief, that he was represented by Cosio throughout that time, and that he still failed to file any applications. The Board further noted that Cosio did not seek a continuance between the May hearing and the date he filed his motion to withdraw as counsel in August. The Board accordingly concluded that the IJ did not abuse her discretion in denying Mendez's motion for a continuance, agreeing with the IJ that Mendez's failure to file his applications for relief was unreasonable. The Board also agreed with the IJ's interpretation of the petty offense exception, *i.e.*, that the maximum penalty possible refers to the statutory maximum found in 18 U.S.C. § 201; accordingly, the Board concluded that Mendez did not qualify for the exception. Mendez filed a timely petition for review.

## STANDARDS OF REVIEW

Where, as here, "the BIA has conducted a de novo review of the record, the Ninth Circuit's review is limited to the BIA's decision, except to the extent the BIA expressly adopted the IJ's opinion." *Singh v. Ashcroft*, 351 F.3d 435, 438 (9th Cir. 2003). We accordingly review the decision of the Board. Determinations of "purely legal questions regarding the Immigration and Nationality Act" are reviewed de novo. *Kankamalage v. INS*, 335 F.3d 858, 861 (9th Cir. 2003). Claims of due process violations are reviewed de novo.

*Montes-Lopez v. Gonzales*, 486 F.3d 1163, 1165 (9th Cir. 2007).

## DISCUSSION

Mendez argues, first, that he qualifies for the petty offense exception of 8 U.S.C. § 1182(a)(2)(A)(ii)(II) because the maximum sentence he could have received under the sentencing guidelines for his 18 U.S.C. § 201 conviction was zero to six months. Mendez's second contention is that the IJ violated his due process rights by unilaterally advancing the date of his hearing from September 29 to August 27, 2004.[3]

## I.   Petty Offense Exception

**[1]** 8 U.S.C. § 1182 sets forth classes of aliens who are inadmissible, including aliens who are convicted of certain crimes. Section 1182(a)(2)(A)(i)(I) provides that aliens who have committed a crime involving moral turpitude are inadmissible, but § 1182(a)(2)(A)(ii) sets forth two exceptions. The exception at issue here is the so-called petty offense exception, which provides as follows:

---

[3]Mendez also contends that his failure to file his applications for relief was due to the ineffective assistance of his counsel, Davis. We lack jurisdiction to consider Mendez's ineffective assistance claim because he failed to raise it before the BIA. *See, e.g.*, *Singh v. Gonzales*, 499 F.3d 969, 974 (9th Cir. 2007) (citing the "well-settled rule of exhaustion" that the petitioner should have raised his ineffective assistance claim before the IJ or the BIA); *Ontiveros-Lopez v. INS*, 213 F.3d 1121, 1124 (9th Cir. 2000) (requiring "an alien who argues ineffective assistance of counsel to exhaust his administrative remedies by first presenting the issue to the BIA"). Moreover, Mendez has failed to comply with the procedural requirements of *Matter of Lozada*, 19 I. & N. Dec. 637 (BIA 1988), which are a pre-condition to bring an ineffective assistance claim. Although "we have dispensed with the *Lozada* obligations where counsel's ineffective assistance was obvious and undisputed on the face of the record," *Reyes v. Ashcroft*, 358 F.3d 592, 597 (9th Cir. 2004), that is not the case here.

> Clause (i)(I) shall not apply to an alien who commit-
> ted only one crime if . . . (II) the maximum penalty
> possible for the crime of which the alien was con-
> victed (or which the alien admits having committed
> or of which the acts that the alien admits having
> committed constituted the essential elements) did not
> exceed imprisonment for one year and, if the alien
> was convicted of such crime, the alien was not sen-
> tenced to a term of imprisonment in excess of 6
> months (regardless of the extent to which the sen-
> tence was ultimately executed).

8 U.S.C. § 1182(a)(2)(A)(ii)(II).

**[2]** There is no question that the sentencing guideline range
for Mendez's conviction under 18 U.S.C. § 201 was zero to
six months. Nor is there any dispute that the statutory maxi-
mum sentence is fifteen years. 18 U.S.C. § 201(b). The ques-
tion is whether the maximum penalty possible for purposes of
the petty offense exception refers to the guideline sentence or
the statutory maximum.

**[3]** The plain language of the statute indicates that the
phrase, "the maximum penalty possible," refers to the statu-
tory maximum, not the maximum sentence under the sentenc-
ing guidelines. The petty offense exception has two
requirements: first, the maximum penalty possible must be
less than one year, and second, if the alien was convicted of
such a crime, the alien must have received a sentence of six
months or less. Thus, the statute already takes into consider-
ation the fact that the sentence imposed might be below the
maximum penalty possible.

**[4]** Moreover, the explicit language of the clause is more
sensibly read as referring to the statutory maximum. The first
requirement refers to "the maximum penalty possible *for the
crime* of which the alien was convicted." 8 U.S.C.
§ 1182(a)(2)(A)(ii)(II) (emphasis added). The maximum pen-

alty accordingly is for the crime of conviction, not the maximum penalty to which the specific alien was exposed under the guidelines.

This interpretation also is supported by the fact that the exception to admissibility under § 1182(a)(2)(A)(i) applies not only to an alien who has been convicted of such a crime, but also to an alien who admits having committed such a crime. Thus, in the case of an alien who has not suffered a conviction of a crime involving moral turpitude, but instead, has admitted committing such a crime, there is no guideline range to which to look in order to determine the maximum penalty possible. Rather, one would have to examine the statute that the alien admitted having violated.

We have addressed the question of whether a maximum penalty refers to a statutory maximum or a guideline sentencing range maximum under statutes with slightly different language from that at issue here. We consistently have concluded that the relevant question is the statutory maximum, not the maximum sentence that can be imposed on the particular defendant.

For example, in *United States v. Murillo*, 422 F.3d 1152 (9th Cir. 2005), *cert. denied*, 547 U.S. 1119 (2006), we addressed 18 U.S.C. § 922(g)(1), the so-called felon-in-possession statute, which criminalizes the possession of a firearm by any person "who has been convicted in any court of[ ] a crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(g)(1). The question was whether the defendant's state convictions were predicate offenses. Both crimes carried a statutory maximum term of imprisonment of five years, but Murillo's maximum possible term under the state sentencing guidelines was twelve months, and he received concurrent ten-month terms. We held that "the maximum sentence that makes a prior conviction under state law a predicate offense under 18 U.S.C. § 922(g)(1) remains, after [*Blakely v. Washington*, 542 U.S. 296 (2004)], the potential

maximum sentence defined by the applicable state criminal statute, not the maximum sentence which could have been imposed against the particular defendant for his commission of that crime according to the state's sentencing guidelines." *Murillo*, 422 F.3d at 1155.

Similarly, in *United States v. Rios-Beltran*, 361 F.3d 1204 (9th Cir. 2004), we addressed whether an Oregon conviction qualified as a felony, for purposes of a sentencing increase under U.S.S.G. § 2L1.2, which provides for an increase in offense level if the defendant has a prior conviction for an aggravated felony. The prior conviction is an aggravated felony "if it is 'punishable by more than one year's imprisonment under applicable state or federal law.' " *Id.* at 1207 (quoting *United States v. Ballesteros-Ruiz*, 319 F.3d 1101, 1103 (9th Cir. 2003)). The statutory maximum for Rios-Beltran's state conviction exceeded one year, but the sentence that could be imposed under the Oregon sentencing guidelines did not. Rios-Beltran accordingly argued that the court should look to the state sentencing guidelines in order to determine whether his prior conviction was punishable by more than a year's imprisonment.

We rejected this argument, stating that "[t]he actual sentence imposed on an individual for a prior conviction, or the actual sentence that potentially could have been imposed based upon the particular facts of that person's case, is not the relevant inquiry." *Id.* at 1208. Instead, "[w]e look to the maximum penalty allowed by law in determining whether a prior conviction constitutes an aggravated felony under state law for purposes of § 2L1.2." *Id.*; *see also United States v. Parry*, 479 F.3d 722, 724-26 (9th Cir.) (rejecting the defendant's argument that "the Oregon Sentencing Guidelines must take precedence over the maximum sentence prescribed by state statute" in determining the maximum term of imprisonment for purposes of the Armed Career Criminal Act), *cert. denied*, 128 S. Ct. 249 (2007).

We also have examined a state conviction's maximum possible sentence in order to determine deportability under 8 U.S.C. § 1227(a)(2)(A)(i), which describes classes of deportable aliens, including, as pertinent here, an alien convicted of a crime involving moral turpitude "for which a sentence of one year or longer may be imposed." 8 U.S.C. § 1227(a)(2)(A)(i). In *Rusz v. Ashcroft*, 376 F.3d 1182 (9th Cir. 2004), we stated that we consistently have looked to the statutory definition of an offense " 'in order to determine whether a conviction constitutes a predicate offense for deportation purposes.' " *Id.* at 1185 (quoting *Tokatly v. Ashcroft*, 371 F.3d 613, 620 (9th Cir.2004)).

When we have had the opportunity to examine the petty offense exception, it has been in the context of offenses that can be either a misdemeanor or felony under state law. Our precedent, accordingly, has addressed only the impact of the state court's designation of the offense. For example, in *Garcia-Lopez v. Ashcroft*, 334 F.3d 840 (9th Cir. 2003), the issue was the application of the petty offense exception to an alien who argued that "his guilty plea conviction pursuant to a California 'wobbler' statute, under which the offense may be treated as either a misdemeanor or a felony, did not result in a conviction of a crime for which the maximum penalty exceeds imprisonment for one year." *Id.* at 842. The state court had declared the conviction to be a misdemeanor, not a felony. We concluded that the state court's designation of the offense was binding on the BIA and that the petty offense exception therefore applied. *Id.* at 845-46; *see also Lafarga v. INS*, 170 F.3d 1213, 1216 (9th Cir. 1999) (holding that where the alien was convicted of an offense classified under Arizona law as an "undesignated" class 6 offense, and the state court designated the offense as a misdemeanor after she completed probation, the alien qualified for the petty offense exception because the maximum possible sentence for a misdemeanor under state law was six months).

*Garcia-Lopez* and *Lafarga* do not inform our inquiry. *Garcia-Lopez*'s conclusion was based on the deference to be

given the state court's designation of the offense, and *Lafarga* focused on the fact that the offense was specifically described in the statute as undesignated. The question, accordingly, was the effect of the state court's action when it later designated the offense as a misdemeanor. Neither case addresses the question we face.

**[5]** We conclude that the more reasonable interpretation of the phrase, "the maximum penalty possible," in the petty offense exception to inadmissibility is that it refers to the statutory maximum sentence, not the guideline sentence to which the alien is exposed. We hold that, because the statutory maximum term of imprisonment for Mendez's bribery offense was fifteen years, the petty offense exception does not apply.**⁴**

## II.   Due Process Claim

Mendez contends that the IJ violated his right to a full and fair hearing by unilaterally advancing the hearing date from September to August of 2004. He relies on *Salgado-Diaz v. Gonzales*, 395 F.3d 1158 (9th Cir. 2005).

In its order dismissing the appeal, the BIA reasoned that Mendez had three months, from the May 4, 2004, initial hearing date until the August 6, 2004, deadline, in which to submit his applications for relief. Moreover, "during this entire period," Cosio was Mendez's attorney of record, and he never asked the court for more time in which to prepare the applications. The Board accordingly agreed with the IJ that Mendez's failure to file his applications for relief was unreasonable.

**[6]** Although immigration proceedings are "not subject to the full range of constitutional protections," an alien may establish a violation of his Fifth Amendment right to due pro-

---

**⁴**Although it was decided subsequent to Mendez's conviction, *United States v. Booker*, 543 U.S. 220, 245 (2005), which rendered the sentencing guidelines advisory, also supports this interpretation.

cess "by showing that he was denied 'a full and fair hearing of his claims and a reasonable opportunity to present evidence on his behalf.' " *Id.* at 1162 (quoting *Colmenar v. INS*, 210 F.3d 967, 971 (9th Cir. 2000)). We disagree that Mendez has made such a showing that his due process rights were violated. In *Salgado-Diaz*, the petitioner's "unlawful arrest and removal" completely "denied him his day in court, substituting a peremptory deportation for a considered immigration court judgment." *Id.* at 1163.

**[7]** Here, by contrast, despite the fact that the IJ advanced the date of the hearing by a month, the IJ did hold a hearing at which Davis was given the opportunity to argue in favor of terminating the proceedings based on the petty offense exception to inadmissibility. The IJ also gave Cosio the opportunity to explain what had happened when Mendez changed attorneys. Moreover, as the BIA reasoned, Mendez had three months in which to file his applications for relief, and he failed to do so. Unlike *Salgado-Diaz*, Mendez was not deprived of the right to a full and fair hearing.

## CONCLUSION

The plain language of 8 U.S.C. § 1182(a)(2)(A)(ii)(II) indicates that the "maximum penalty possible" refers to the statutory maximum, not the maximum guideline sentence to which the alien was exposed. This conclusion is supported by our interpretation of similar language in other contexts. The statutory maximum term of imprisonment for Mendez's bribery offense is fifteen years; accordingly, he is ineligible for the petty offense exception. Mendez's due process rights were not violated because he was not deprived of the right to a full and fair hearing. Finally, Mendez has failed to exhaust his ineffective assistance claim. For the foregoing reasons, the petition for review is

**DENIED.**