IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---------------
No. 91-3554
--------------

UNITED STATES OF AMERICA,           Plaintiff-Appellee,

versus

DON DOWLING,                        Defendant-Appellant.

---------------------------------------------------------------------
Appeal from the United States District Court
for the Eastern District of Louisiana

---------------------------------------------------------------------

(May 21, 1992)

Before, BROWN, GARWOOD and EMILIO M. GARZA, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

The sole issue before us is whether 18 U.S.C. § 3585(b) allows credit for time spent in official detention to reduce a term of probation.

Dowling, who pleaded guilty to misprision of a felony, argues that the time he served in Parish Prison prior to his sentencing should be credited towards the community confinement portion of the three year sentence of probation he eventually received. Because Dowling's halfway house confinement is merely a special condition of his probation, rather than a term of imprisonment, no credit may apply to reduce his sentence. We therefore affirm the judgment of the district court.

### How it all started

Dowling was arrested on January 23, 1991, for aiding the

attempted escape of Gayleann P. Neidhardt, a federal inmate, from the St. Tammany Parish Prison. Dowling was ordered detained without bond and he remained in Orleans Parish Prison from January 24 to April 5, 1991, a total of 74 days.

On April 3, 1991, Dowling entered a plea of guilty pursuant to a Plea Agreement in which the Government agreed to dismiss the original Indictment against him and supersede the original Indictment with a Bill of Information charging him with misprision of a felony. 18 U.S.C. § 4. Two days later Dowling was released on a personal surety bond.

On June 19, 1991, the District Court sentenced Dowling to three years probation and, in addition to standard conditions of probation, the District Court ordered him confined for six months at the Volunteers of America Community Correctional Center, a halfway house, where he was instructed to remain except for the hours he spent at his place of employment.[1] Although requested by Dowling at sentencing, the District Court refused to give him credit for the 74 days he served in the Parish Prison from the date of his arrest and detention, January 22, 1991, until April 5, 1991, when he made bond.

*Credit Crossfire*

---

[1] According to the Statement of Reasons for Imposing Sentence, the District Court accepted the Sentencing Guidelines range of 0-6 months as calculated in the probation officer's Pre Sentence Investigation Report, and the District Court found "no reason to depart from the sentence called for by application of the guidelines ...." A sentence of probation was merited as Dowling's minimum term of imprisonment was zero months. U.S.S.G. § 5B1.1(a)(1). Because Dowling's crime was a felony, a probationary term of not less than one nor more than five years was authorized. 18 U.S.C. § 3561(b)(1). Therefore, the District Court was authorized to sentence Dowling to three years' probation. The six-month term of residence at the halfway house was included in Dowling's sentence as a special condition of probation. U.S.S.G. § 5B1.4(b)(19); § 5F1.1.

2

In an effort to distinguish his appeal from that of the defendant in United States v. Temple,[2] 918 F.2d 134 (10th Cir. 1990), Dowling seeks to set aside only the community confinement portion of his sentence because:

> (a)  the District Court's sentence refusing credit for time served in Parish Prison (prior to sentencing) toward Dowling's community confinement condition of probation exceeded the six month maximum sentence established in the guideline range;

> (b)  the District Court failed to articulate any specific reasons for the upward departure; and

> (c)  the denial of credit for time served violated equal protection as no rational basis exists for the disparate treatment of a similarly situated defendant who receives credit for time served only because he was sentenced to six months' imprisonment rather than six months' community confinement as a special condition of probation.

The Government responds that since Dowling was sentenced to a term of probation, rather than a term of imprisonment, he cannot receive credit for time served in presentence custody to reduce his probation.  The Government claims that the statute governing credit for time served, 18 U.S.C. § 3585(b), allows credit for presentence

---

[2]  In Temple, the namesake defendant contended that he should receive credit for time spent in confinement on a prior felony conviction to reduce his probation term. 918 F.2d at 135.  Interpreting 18 U.S.C. § 3568 (§ 3585(b)'s predecessor statute -- see note 4, *infra*), the Tenth Circuit held that "Congress did not intend criminal defendants to receive credit toward probation for time spent in custody" because a "term of probation" does not "constitute[] a sentence of imprisonment pursuant to section 3568."  Id.
Dowling argues that Temple does not foreclose his credit request because he was not sentenced to "straight probation" as in Temple, but, instead, received a term of probation with a special condition attached: a six-month stay in a halfway house.  Thus, Dowling seeks to apply credit toward only his six-month community confinement term, hoping that such a focus removes his appeal from within the ambit of Temple.

official detention[3] to be applied only to "a term of imprisonment." Therefore, the issue of Dowling's appeal comes down to this: Whether Dowling's special condition of probation confining him to a halfway house is a "term of imprisonment" toward which credit may be awarded.

*Only give credit where credit is due*

The phrase "term of imprisonment" carries significant meaning as a term-of-art in 18 U.S.C. § 3585(b), the statute which authorizes credit for prior custody. Section 3585(b),[4] which became effective in 1987 as part of the Sentencing Reform Act of 1984, 18 U.S.C. § 3551 *et seq.*, states:

> A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences--
>
> (1) as a result of the offense for which the sentence was imposed; or
>
> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> that has not been credited against another sentence.

---

[3] It is uncontroverted and we agree that Dowling's 74-day stay in Orleans Parish Prison constituted "official detention" for purposes of 18 U.S.C. § 3585(b). United States v. Becak, 954 F.2d 386, 388 (6th Cir. 1992) ("'official detention' means incarceration.").

[4] 18 U.S.C. § 3585(b) is a recodification of its predecessor statute 18 U.S.C. § 3568 which stated in relevant part:

> The sentence of imprisonment of any person convicted of an offense shall commence to run from the date on which such person is received at the penitentiary, reformatory, or jail for service of such sentence. The Attorney General shall give any such person credit toward service of his sentence for any days spent in custody in connection with the offense or acts for which sentence was imposed.

18 U.S.C. § 3568.

4

18 U.S.C. § 3585(b).

In its recent opinion interpreting 18 U.S.C. § 3585(b), United States v. Wilson, 503 U.S. ___, 112 S.Ct. 1351, 117 L.Ed.2d 593 (1992), the United States Supreme Court held that § 3585(b) does not authorize a district court to compute credit for time spent in official detention at sentencing, but that credit awards are to be made by the Attorney General, through the Bureau of Prisons,[5] after sentencing.[6]  117 L.Ed.2d at 600.  Prisoners may then seek administrative review of the computations of their credit, see 28 C.F.R. §§ 542.10-542.16 (1990), and, once they have exhausted their administrative remedies, prisoners may only *then* pursue judicial review of these computations.  117 L.Ed.2d at 601.

Dowling cannot receive credit toward his halfway house stay because § 3585(b) does not authorize credit to be awarded toward a

---

[5]  28 C.F.R. § 0.96 (1991) states that "[t]he Director of the Bureau of Prisons is authorized to exercise or perform any of the authority, functions, or duties conferred or imposed upon the Attorney General by any law relating to the commitment, control, or treatment or persons ... charged with or convicted of offenses against the United States ...."  This all inclusive delegation authorizes the Bureau of Prisons to make credit determinations.  United States v. Lucas, 898 F.2d 1554, 1555 n.2 (11th Cir. 1990).

[6]  The Wilson opinion explains exactly why it is the job of the Bureau of Prisons, and not the District Court, to determine the amount of credit, if any, to be awarded to the defendant:

> After a District Court sentences a federal offender, the Attorney General, through the Bureau of Prisons, has the responsibility for administering the sentence.  See 18 U.S.C. § 3621(a)("A person who has been sentenced to a term of imprisonment...shall be committed to the custody of the Bureau of Prisons until the expiration of the term imposed").  To fulfill this duty, the Bureau of Prisons must know how much of the sentence the offender has left to serve.  Because the offender has a right to certain jail-time credit under § 3585(b), and because the District Court cannot determine the amount of credit at sentencing [because federal defendants do not always begin to serve their sentences immediately], the Attorney General has no choice but to make the determination as an administrative matter when imprisoning the defendant.

Wilson, 117 L.Ed.2d at 600-601.

5

term of probation, no matter how severe the probationary conditions imposed on the offender.  This is so because a necessary condition to obtaining § 3585(b) credit is that the offender must first exhaust his administrative remedies before the Bureau of Prisons. Wilson, 117 L.Ed.2d at 601.  Yet, unlike his co-defendant's who received prison terms for their roles in the attempted escape, Dowling was not committed to the custody of the Bureau of Prisons after sentencing.[7]  As Dowling's sentence of probation is not supervised by the Bureau of Prisons, he obviously cannot exhaust his administrative remedies before it.[8]  See 28 C.F.R. § 0.96 (1991).  Since he cannot seek review before the Bureau, such review being an absolute prerequisite to receiving credit, Dowling cannot enjoy the benefit of a § 3585(b) credit determination.[9]

Accordingly, the District Court correctly determined that Dowling is due no credit towards the halfway house portion of his probation term, not because the § 3585(b) calculation makes it so, but because § 3585(b) does not apply to nor award credit toward a

---

[7]     In fact, on Dowling's Judgment and Probation/Commitment Order the District Court struck the clause ordering that "The defendant is hereby committed to the custody of the United States Bureau of Prisons for a term of ___ months"(underline indicates deleted portion). Instead, the court typed [The defendant is hereby] "placed on probation for a term of three years...."  In contrast, on the co-defendants' Commitment Orders, the clause was not deleted as both co-defendants were sentenced to terms of imprisonment.

[8]     The Bureau of Prisons exercises no control over Dowling; rather, it is the District Court that supervises Dowling's term of probation.  3 C. Wright, Federal Practice and Procedure: Criminal 2d § 529 at pp. 152-153 (1982) ("Since the probation law is intended to rehabilitate the offender without having to place him in prison, it contemplates that during the probation period he will be within the jurisdiction of the court that retains control over him and be available to probation officers for the performance of their duties.").

[9]     Thus, by employing the Supreme Court's holding in Wilson, we agree with the result in United States v. Temple:  18 U.S.C. § 3585(b) does not authorize credit to be awarded toward a term of probation.  918 F.2d at 135.

6

term of probation in the first place.[10]

As a final matter, Dowling's constitutional challenge is without merit. Even assuming that a defendant sentenced to a term of probation with a special condition attached is similarly situated to a defendant sentenced to a like term of imprisonment, there exists a rational basis for such disparate treatment in awarding credit time toward a sentence of imprisonment and denying it to a term of probation: To wit, Dowling was presumably placed in the halfway house environment to ease his return to society. Given that there is a specific rehabilitative purpose to his successfully completing his community confinement (i.e., to incorporate Dowling as a law-abiding citizen back into society), the rehabilitative gain of a halfway house stay (as opposed to the punitive or retributive value of imprisonment) should not be diminished by applying credit to reduce the term of his probation.

The District Court did not err in denying credit for time served.

AFFIRMED.

---

[10] Thus, for purposes of 18 U.S.C. § 3585(b), a special condition of probation confining one to a halfway house cannot qualify as a "term of imprisonment." Cf. United States v. Canales, ___ F.2d ___, ___ (5th Cir. 1992) (escape from a halfway house while serving a "sentence of imprisonment" merits enhancement of sentence under U.S.S.G. § 4A1.1(e); United States v. Vickers, 891 F.2d 86, 87-88 (5th Cir. 1989) (same)).