File Name: 07a0557n.06

Filed: August 8, 2007

NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

No. 06-3313

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

MAGDI LAMEY MOSSAAD,

     Petitioner,

v.

ALBERTO R. GONZALES, Attorney General of
the United States of America,

     Respondent.

ON PETITION FOR REVIEW FROM
THE BOARD OF IMMIGRATION
APPEALS

_____/

Before:     MARTIN, BATCHELDER, and CLAY, Circuit Judges.

BOYCE F. MARTIN, JR., Circuit Judge. Magdi Lamey Mossaad, a native of Egypt, petitions for review of a Board of Immigration Appeals decision affirming an Immigration Judge's order that Mossaad be removed from the United States to Egypt. Mossaad argues that the Immigration Judge (IJ) and the Board of Immigration Appeals (BIA) committed error by retroactively applying the Immigration and Nationality Act (INA) to bar him from seeking asylum and withholding of removal. He additionally argues that the Immigration Judge and the Board erred in denying his claim for protection under the United Nations Convention Against Torture. For the following reasons, we DENY his petition for review.

I.

Mossaad, a native of Egypt, was admitted into the United States as a lawful permanent resident in 1979. He was nine years old. According to Mossaad's testimony, he and his family are Coptic Christians. Coptic Christians are the largest Christian minority group in the Middle East, numbering more than 6 million in Egypt alone. They have been subject to persecution for decades by both the Egyptian government and rogue Islamic militant groups.

In 1989, having lived in the United States for approximately ten years, Mossaad pled guilty to armed robbery. He served approximately six years in prison and was released in 1995. In 2000, the Immigration and Naturalization Service (INS) commenced removal proceedings against Mossaad. He was charged with removability under § 237(a)(2)(A)(iii) of INA, as an alien who, at any time after admission, was convicted of an aggravated felony, including a crime of violence for which the term of imprisonment is at least one year. *See* 8 U.S.C. §§ 1101(a)(43)(F)-(G), 1227(a)(2)(A)(iii). He was also charged with removability under § 237(a)(2)(C) of the INA, as an alien who, at any time after admission, was convicted of a firearms offense. *See* 8 U.S.C. § 1227(a)(2)(C). On October 8, 2004, the IJ found that Mossaad's conviction for armed robbery barred him from applying for asylum and withholding of removal pursuant to 8 C.F.R. § 208.13(c)(2)(i)(A). The IJ also denied his claim for protection under the United Nations Convention Against Torture and ordered him removed to Egypt. The BIA affirmed the findings of the IJ.

II.

The immigration laws of the United States have always stated that aliens may be deported or excluded from entry for the commission of certain crimes. Under the Immigration and Nationality

Act of 1952, aliens were deportable (now known as removable) upon conviction for two crimes of "moral turpitude," or for one such crime if it occurred within five years of entry and resulted in a jail term of at least one year. *INS v. St. Cyr*, 533 U.S. 289, 295 (2001) (citing 8 U.S.C. § 1227 (a)(2)(A)(i)-(iii) (1994 ed., Supp. V.)). The Anti-Drug Abuse Act of 1988 further specified that an alien is removable upon conviction for any "aggravated felony," which was defined to include numerous offenses without regard to how long ago they were committed. *Id.* Before 1990, however, aliens who were removable due to a conviction for an aggravated felony or for crimes of moral turpitude were still eligible for discretionary relief from deportation. Section 212(c) of the Immigration and Nationality Act of 1952 was "interpreted by the Board of Immigration Appeals to authorize any permanent resident alien with a lawful unrelinquished domicile of seven consecutive years to apply for a discretionary waiver from deportation." *Id.* (internal quotations and citations omitted). If relief was granted, the alien remained a permanent resident despite his or her conviction.

The Immigration Act of 1990 amended § 212(c) to preclude from discretionary relief anyone convicted of any aggravated felony who had served a term of imprisonment of at least five years. *Id.* (citing 104 Stat. 4978, 5052 (1990) (amending 8 U.S.C. § 1182(c))). The Act expressly stated that the aggravated felony bar to discretionary relief applied to "convictions entered before, on, or after the date of the enactment of this Act." Immigration Act of 1990, Pub. L. No. 101-649, § 515(b)(2), 104 Stat. 4978. One year later, further restrictive amendments were passed. *See* Miscellaneous and Technical Immigration and Naturalization Amendments of 1991 (MTINA), Pub. L. No. 102-232, 105 Stat. 1733 (1991). MTINA provided that any alien convicted of an aggravated

felony is barred from seeking asylum and is also barred from applying for withholding of removal for convictions entered before, on, or after the date of enactment. *Id.* at § 306(a)(13).

The question before this Court is whether the aggravated felony bar provisions of the Immigration Act of 1990 and MTINA apply retroactively to Mossaad's 1989 conviction for armed robbery. The Supreme Court has provided a two-pronged approach for determining if a statute should be applied retroactively. *See St. Cyr*, 533 U.S. at 291. First, a court must ascertain whether Congress has "directed with the requisite clarity that the law be applied retrospectively." *Id.* If the court finds that Congress clearly intended for the law to be applied retroactively, the analysis ends and the law may be applied as Congress clearly intended. While the presumption against retroactivity is strong, "it is beyond dispute that, within constitutional limits, Congress has the power to enact laws with retrospective effect." *Id.* If, however, the court finds that Congress was not clear enough in its intention to apply the law retroactively, it must determine whether the law attaches new legal consequences to events completed before its enactment. *Id.* (citing *Landgraf v. USI Film Products*, 511 U.S. 244, 270 (1994)). A law will be found to be impermissibly retroactive if it "takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past." *Id.* at 321 (internal quotations and citations omitted).

Here, we need not reach the second prong of the *St. Cyr/Landgraf* inquiry, as Congress more than adequately dictated that the aggravated felony bars contained in the Immigration Act of 1990 and MTINA should apply retroactively to all such convictions. *See* Immigration Act of 1990, § 515(b)(1); MTINA § 306(a)(13) (stating that the aggravated felony bar applies to "convictions

entered before, on, or after" the date of enactment) . And while this issue appears to be a matter of first impression in the Sixth Circuit, almost every other Circuit that has addressed it has come to one of two conclusions: (1) that Congress adequately stated its intent to apply the aggravated felony bar retroactively,[1] or (2) that the BIA's interpretation that the aggravated felony bar applies retrospectively is a permissible construction of the statute.[2]

Petitioner nevertheless argues that the BIA and the IJ impermissibly applied the immigration *regulation* barring individuals convicted of aggravated felonies from seeking asylum and withholding of removal retroactively to his 1988 conviction for armed robbery.[3] This Court finds

---

[1]Some courts have found that Congress clearly intended to make 8 U.S.C. § 1158(d) – currently § 1158(b) – retroactive. *See Feroz v. INS*, 22 F.3d 225, 226-27 (9th Cir. 1994) (affirming the BIA's retroactive application of 8 U.S.C. § 1158(d) to bar petitioner's asylum application, stating that "Congress has made clear its intention in this regard"); *Buitrago-Cuesta v. INS*, 7 F.3d 291, 295 (2d Cir. 1993) (noting that, with respect to 8 U.S.C. § 1158(d), "the concept of aggravated felony expressly applies retroactively"); *Martins v. INS*, 972 F.2d 657, 660 (5th Cir. 1992) (reasoning that Congress inserted the "before, on, or after" language in order to bar all aggravated felons from applying for asylum).

[2]Other courts have found the statute ambiguous, but have nonetheless deferred to the BIA's interpretation as set forth in *Matter of A-A*, 20 I. & N. Dec. 492 (1992). *See Barreiro v. INS*, 989 F.2d 62, 64 (1st Cir. 1993) (holding that the BIA's interpretation is persuasive despite "presumption against retroactivity"); *De Osorio v. INS*, 10 F.3d 1034, 1039 (4th Cir. 1993) (concluding that "the Board's interpretation [as to the effective date of the term 'aggravated felony'] is a permissible construction of the statute and is more consistent with the intent of Congress").

[3]Petitioner relies on *Kankamalage v. INS*, 335 F.3d 858 (9th Cir. 2003), where the Ninth Circuit held that the immigration regulation that outlines the procedures for determining asylum and withholding of removal could not be applied retroactively to convictions occurring before the regulation was enacted. We believe the *Kankamalage* Court erred in its analysis. While that court found that the *regulation* could not be retroactively applied to convictions entered before its enactment, the court did not analyze the *statute* passed by Congress which governs whether an individual is eligible for asylum or withholding of removal. The Ninth Circuit itself had previously held that Congress intended the aggravated felony bars contained in the Immigration Act of 1990 and MTINA to apply retroactively. *See Feroz v. INS*, 22 F.3d 225, 226-227 (9th Cir. 1994). Thus it

that while the IJ and the BIA both cited to 8 C.F.R. § 208.13(c)(2)(i)(A), that *regulation* does not control this Court's decision. "If the statute is clear and unambiguous that is the end of the matter, for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. . . . The traditional deference courts pay to agency interpretation is not to be applied to alter the clearly expressed intent of Congress." *K-Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988) (internal quotation marks and citations omitted)). As discussed above, Congress clearly expressed its intent to apply the aggravated felony bar retroactively in the Immigration Act of 1990 and MTINA. The fact that the INS *regulation* governing asylum procedures does not contain the same clear expression of retroactivity does not undo Congress's clear intent.

Given the clarity with which Congress has spoken with regard to the retroactive effect of the aggravated felony bar, we DENY Mossaad's petition for review of the Board's determination that Mossaad's 1989 conviction for armed robbery bars his claims for asylum and withholding of removal pursuant to 8 U.S.C. § 1158(b)(2)(A)(ii), (B)(i) (asylum bar) and 8 U.S.C. § 1231(b)(3)(B) (withholding of removal bar).

III.

Because Mossaad's conviction for armed robbery bars him from applying for asylum or withholding of removal, his only remaining avenue of relief is via a claim for protection under the

---

appears *Kankamalage* is not in accord with its own binding precedent. This analysis may all be moot as the regulation at issue, 8 C.F.R. § 208.13(c)(2)(i)(A), only applies to petitions for asylum filed before April 1, 1997. Petitioner's immigration case did not begin until 2000, thus this regulation does not even apply to him.

Convention Against Torture. Mossaad argues that the IJ's decision denying his Convention claim was based on erroneous factual determinations.

This Court has jurisdiction over Mossaad's appeal of the BIA's denial of his request for relief under the Convention pursuant to 8 U.S.C. § 1252(b)(4). *See Castellano-Chacon v. INS*, 341 F.3d 533, 545-53 (6th Cir. 2003). Because the BIA adopted the IJ's factual findings regarding Mossaad's eligibility for Convention relief, we review the IJ's decision directly to determine whether the BIA's decision should be upheld. *Denko v. INS*, 351 F.3d 717, 723 (6th Cir. 2003).

We may reverse the IJ's determination against withholding of removal pursuant to the Convention Against Torture if it is "manifestly contrary to law." *Almuhtaseb v. Gonzales*, 453 F.3d 743, 749 (6th Cir. 2006) (citing 8 U.S.C. § 1252(b)(4)(C)). We defer to the IJ's findings of fact except when "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *accord Yu v. Ashcroft*, 364 F.3d 700, 702-03 (6th Cir. 2004).

"[T]o be eligible for withholding of removal under the [Convention], the applicant bears the burden of establishing 'it is more likely than not that he or she would be tortured if removed to the proposed country of removal.'" *Almuhtaseb*, 453 F.3d at 749 (quoting 8 C.F.R. § 1208.16(c)(2)). Furthermore, to qualify for withholding of removal under the Convention, Mossaad must establish a "particularized threat of torture." *Castellano-Chacon*, 341 F.3d at 551. In relevant part, "torture" means

> any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as . . . punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or

suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

8 C.F.R. § 1208.18(a)(1). The term "torture" only describes "an extreme form of cruel and inhuman treatment and does not include lesser forms of cruel, inhuman or degrading treatment or punishment that do not amount to torture." *Almuhtaseb*, 453 F.3d at 749 (quoting 8 C.F.R. § 1208.18(a)(2)).

In considering whether it is more likely than not that Mossaad would be subject to torture were he returned to Egypt, all evidence related to the chance of future torture should be assessed by the IJ, including, but not limited to

(i) Evidence of past torture inflicted upon the applicant;

(ii) Evidence that the applicant could relocate to a part of the country of removal where he or she is not likely to be tortured;

(iii) Evidence of gross, flagrant or mass violations of human rights within the country of removal, where applicable; and

(iv) Other relevant information regarding conditions in the country of removal.

8 C.F.R. § 208.16(c)(3).

Mossaad presented documentary and testimonial evidence that he and his family were Coptic Christians and that Coptic Christians have been ill-treated in Egypt for many years. The IJ, in a detailed and lengthy order, discussed all of the evidence presented by Mossaad with regard to the treatment of Coptic Christians in Egypt, including the testimony of Mossaad and his mother. Mossaad was unable to provide any evidence that he personally had been tortured in the past. The closest thing to torture Mossaad experienced were incidents of bullying as a child by Muslim neighbors and that Christians (including himself) were hit with palms during a Palm Sunday

processional by Muslim neighbors. Mossaad did present documentary evidence of the plight of Coptic Christians in Egypt. But while this evidence outlined the historic ill-treatment of Coptic Christians, the IJ found that the articles and other documents presented appeared to show "that on the overall, things at least on the surface appear to be getting better, not worse." Joint App'x at 31. The IJ found Mossaad credible, but did not find that he would "more likely than not" be subject to torture were he returned to Egypt. As the IJ adequately put it, "[t]he bottom line is that while the respondent certainly will be placed in danger if he is removed to Egypt, the respondent has not demonstrated that is more likely than not that [he] . . . would be subjected to torture . . . ." *Id.* at 44. This finding is supported by substantial evidence, and nothing presented by Mossaad compels this Court to conclude to the contrary.

IV.

Finally, Mossaad contends that the IJ's failure to continue his removal hearing until he was able to obtain counsel was a violation of due process.

We review *de novo* alleged due process violations in removal hearings. *Mikhailevitch v. INS*, 146 F.3d 384, 391 (6th Cir. 1998). The Sixth Circuit has stated that "Fifth Amendment guarantees of due process extend to aliens in [removal] proceedings, entitling them to a full and fair hearing. To constitute fundamental unfairness, however, a defect in the removal proceedings must have been such as might have led to a denial of justice." *Huicochea-Gomez v. INS*, 237 F.3d 696, 699 (6th Cir. 2001) (internal quotation and citations omitted). "Therefore, reviewing an alleged due process violation is a two-step inquiry: first, whether there was a defect in the removal proceeding; and

second, whether the alien was prejudiced because of it." *Vasha v. Gonzales*, 410 F.3d 863, 872 (6th Cir. 2005).

Mossaad was issued a Notice to Appear on June 28, 2000 and his first hearing before the IJ was held on November 28, 2000. On February 13, 2001, Mossaad filed for deferral of removal under the Convention. A hearing to decide whether his removal should be deferred was set for September 9, 2004. At that hearing, Mossaad requested a continuance in order to seek new counsel. He believed his present counsel was not preparing his case vigorously enough and had not thoroughly prepared for the hearing. Mossaad informed the IJ that his church had contacted an immigration attorney from New York. During the hearing, the IJ called the immigration attorney who said that he had not yet been retained, but if details were worked out, he could represent Mossaad and appear on October 8, 2004 for the removal hearing. Relying on the representations of Mossaad and the immigration attorney, the IJ continued the hearing until October 8, 2004.

On October 8, 2004, Mossaad appeared at his removal hearing without counsel. He informed the IJ that he had been unable to come to terms with the attorney from New York. At the hearing, Mossaad did not ask for another continuance to seek new counsel. The IJ allowed the hearing to go forward.

In order to establish a due process violation, Mossaad must show that his lack of counsel at his removal hearing rose to the level of a constitutional defect, and that had he been represented by counsel he would not have been ordered removed. *See Sako v. Gonzales*, 434 F.3d 857, 864 (6th Cir. 2006) ("[Petitioner] must establish that, but for the ineffective assistance of counsel, he would have entitled to continue residing in the United States."). This Court has held that where an alien has

effective assistance of counsel at the BIA stage, the fact that he was unrepresented or had ineffective assistance of counsel in front of the IJ does not constitute a due process violation. *See Aguilera-Enriquez v. INS*, 516 F.2d 565 (6th Cir. 1975). Mossaad does not argue that he did not have effective assistance of counsel at the BIA stage. In fact, he submitted briefs to the BIA which were prepared by attorneys, revealing that he was assisted by counsel during his appeal. Thus, Mossaad's due process rights were not abridged by the IJ's failure to grant an additional continuance so that Mossaad could have retained new counsel because he was adequately represented in front of the BIA and received a full administrative consideration of his arguments. *See id.* at 569 *(*"[t]he lack of counsel before the Immigration Judge did not prevent full administrative consideration of his argument. . . . Fundamental fairness, therefore, was not abridged during the administrative proceedings, and the order of deportation [was] not subject to constitutional attack for a lack of due process." (internal quotation marks omitted)).

V.

For the reasons stated above, this Court DENIES the petition for review of the BIA's and the IJ's findings that Mossaad is ineligible for asylum and withholding of removal, DENIES the petition for review of the BIA's and IJ's denial of Mossaad's claim for protection under the Convention Against Torture, and DENIES the petition for review of the BIA's and IJ's denial of Mossaad's request for a further continuance of his removal hearing in order to obtain new counsel.