# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3597

_____

|  |  |  |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| Johnette Lehmann, also known as | * | |
| Johnette Prudhomme, also known as | * | [PUBLISHED] |
| Johnette Davidson, also known as | * | |
| Johnette Prine, also known as Johnette | * | |
| Steelman, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: May 17, 2007
Filed: January 17, 2008

_____

Before MURPHY, HANSEN, and COLLOTON, Circuit Judges.

_____

PER CURIAM.

Johnette Lehmann pled guilty to unlawful possession of a firearm as a previously convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The

district court[*] sentenced her to probation, and the government appeals, arguing that the sentence is unreasonable with regard to 18 U.S.C. § 3553(a). We affirm.

On September 18, 2005, Lehmann's eight-year-old son, Jamie, called Lehmann to say that Ashley, Lehmann's fourteen-year-old daughter, was bleeding. Lehmann returned home to find Ashley lying face down in a pool of blood with a pistol underneath her body. Ashley died several days later, apparently from a self-inflicted gunshot wound. Lehmann told investigators that she had taken the gun from an ex-boyfriend in 2003, because he was an alcoholic, and kept it high on a shelf in her closet. As a previously convicted felon, however, Lehmann was prohibited from possessing the firearm.

It is undisputed that the district court correctly calculated the advisory sentencing guidelines range, which provided for a sentencing range of 37 to 46 months' imprisonment before any departure or variance. Lehmann urged the district court to depart downward under § 5H1.6 of the advisory guidelines, or to vary from the advisory guidelines under 18 U.S.C. § 3553(a), based on her family ties and responsibilities. In particular, Lehmann argued that her son Jamie, who turned nine years old on September 19, 2005, suffered from disabilities that required her day-to-day involvement in his care and development. She argued that Jamie's father, despite his long-time role as either the primary or joint custodial parent for Jamie, was not in a position to provide the necessary care and emotional support.

At the sentencing hearing, the parties presented competing evidence concerning the impact of a term of imprisonment for Lehmann on Jamie. Lehmann presented testimony from a psychologist and a therapist, both of whom believed that separating Jamie from his mother would have a negative impact on the child. The government

_____

[*]The Honorable Richard E. Dorr, United States District Judge for the Western District of Missouri.

countered with evidence from James and Denise Prine, Jamie's father and step-mother, that they were willing and able to care for Jamie if Lehmann was incarcerated.

The district court was persuaded by Lehmann's evidence concerning the welfare of her son, and pronounced a sentence for the firearms charge of five years' probation with six months of community confinement as a condition of probation. The court first announced that a departure was in order under USSG § 5H1.6, but never quantified the degree of any downward departure that would be granted. The court then declared that in addition to a downward departure, it also intended to grant a "variance" based on 18 U.S.C. § 3553(a), because "the guideline provision of 37 to 46 months is unreasonable on this set of facts." We construe the record, therefore, to mean that the district court justified its deviation from the advisory guidelines range as a "variance" based on § 3553(a), without regard to any guidelines-based departure that might also have been warranted.

The court emphasized that Lehmann was "not on trial for the death of her daughter," and found that the evidence regarding Jamie "clearly" took this case "outside the heartland of cases." The court "wasn't much impressed" with the testimony of the therapist, but found "particularly compelling" the testimony of Dr. Robert Ingegneri, a psychologist who had treated Jamie. Dr. Ingegneri opined that Jamie was likely to "decompensate emotionally," and suffer a setback in his overall development, if his mother were removed from his life. The doctor explained that since the death of his sister, Jamie fluctuated among exhibiting symptoms of Asperger's disorder, attention deficit hyperactivity disorder, and post-traumatic stress disorder. Dr. Ingegneri noted that Jamie responds positively to his mother, and that she was active in helping him address his disorders. In contrast, Dr. Ingegneri concluded that Jamie did not have a similar bond with his father and stepmother. He concluded that Jamie's father tended to minimize Jamie's difficulties, and wanted to reduce the frequency of Jamie's therapy sessions. The district court also expressed

doubt that Jamie's father and stepmother could provide adequate support, given their history of domestic disputes and discussions about a possible divorce.

The district court stated that "the one thing that guides me more than ever is I do not want this young boy to suffer any more." The court believed this was "an extraordinary, exceptional situation and not by any stretch of the imagination is it a simple felon in possession case." Reviewing the § 3553(a)(2) factors, the court found that incarceration was not a necessary punishment. "Does she need prison time to have the appropriate punishment? I just can't see where that serves any purpose for additional punishment. The loss of the daughter certainly provided punishment." Turning to the need for deterrence, the court found "this is about as mild as a felon in possession case can [be], again, keeping the death of the daughter as a separate issue here." The court noted that there was no evidence of other criminal activity connected to the firearm. The court also believed that there was no need for incarceration to protect the public, noting "[s]he needs protection from herself probably as much as anything." Finally, considering rehabilitation, the court found no evidence that "additional education or vocational training or some other type of correctional training would be of any benefit." After sentencing Lehmann to probation, the court told her, "[Y]our counsel will tell you that you have had a break here. And I'm giving you the break because primarily of your son Jamie. [W]ith your history and this record, it would be a different result if . . . [not] for my concerns for him."

We review the sentence imposed for reasonableness with regard to 18 U.S.C. § 3553(a), *United States v. Booker*, 543 U.S. 220, 261 (2005), applying a "deferential abuse-of-discretion standard." *Gall v. United States*, 128 S. Ct. 586, 591 (2007). According to the Supreme Court in *Gall*, we must first ensure that the district court committed no significant procedural error. This procedural review includes determining whether the district court properly calculated the guidelines range, and ensuring that the district court adequately explained the chosen sentence, including any deviation from the guidelines range. *Id*. at 597. Then, if the sentence imposed by

the district court varies from the advisory guidelines range, our substantive reasonableness review may "take the degree of variance into account and consider the extent of a deviation from the Guidelines," *id*. at 595, but we must give "due deference" to the district court's decision that "the § 3553(a) factors, on a whole, justify the extent of the variance." *Id*. at 597. The district court has a responsibility in the first instance to "ensure that [its] justification is sufficiently compelling to support the degree of the variance." *Id.* While we may not require "proportional" justifications for variances from the guidelines range, *id*. at 594, the Court was clear to say it is "uncontroversial that a major departure should be supported by a more significant justification than a minor one." *Id*. at 597. Accordingly, as we understand *Gall*, we now examine the "substantive reasonableness of the sentence" by taking into account "the totality of the circumstances, including the extent of any variance from the Guidelines range," *id*., and the strength of the stated justification, while viewing the district court's decision through a "deferential abuse-of-discretion" lens. *Id.* at 598.

In this case, consistent with *Gall*'s direction "to secure nationwide consistency" by using the guidelines as "the starting point and the initial benchmark," *id*. at 596, the district court correctly calculated and reviewed the advisory guidelines range. The district court considered the § 3553(a) factors, specifically discussing the factors of § 3553(a)(2). *Cf. United States v. Lamoreaux*, 422 F.3d 750, 756 (8th Cir. 2005) ("Nothing in § 3553(a) or in the *Booker* remedy opinion requires robotic incantations that each statutory factor has been considered.") (internal marks omitted). The district court also gave adequate weight and consideration to the need to avoid unwarranted disparities among defendants with similar records, § 3553(a)(6), by emphasizing the dissimilarities in this record, and noting that this was "not by any stretch of the imagination [ ] a simple felon in possession case." *See Gall*, 128 S. Ct. at 600 (stating that the district judge's consideration of "unwarranted disparities" properly included "the need to avoid unwarranted *similarities* among other[s] . . . who were not similarly situated"). The court explained at some length its reasons for imposing a sentence that

deviated substantially from the advisory guidelines range, thus allowing for meaningful appellate review. In short, the sentencing decision was "procedurally sound." *Id*. at 597.

The district court imposed a sentence of probation, and the government argues that the sentence is substantively unreasonable. Our precedents prior to *Gall* "routinely" rejected as unreasonable those variances that resulted in a sentence of probation when the guidelines recommend a term of imprisonment, *United States v. Soperla*, 494 F.3d 752, 755-56 (8th Cir. 2007), in part because "probation is not merely a reduced sentence, but a different type of sentence altogether." *Id.* at 756 (citing 18 U.S.C. § 3561; USSG § 5B1 (intro. comment.)). The Supreme Court in *Gall*, however, emphasized that "[o]ffenders on probation are subject to several standard conditions that substantially restrict their liberty," 128 S. Ct. at 595, and affirmed a sentence of probation for a drug trafficker with an advisory guidelines range of 30 to 37 months' imprisonment. The Court also indicated that a sentence of probation would be permissible for a drug trafficking offense with a guidelines range of 30-37 months' imprisonment, if there were "compelling family circumstances where individuals [would] be very badly hurt in the defendant's family if no one is available to take care of them." *Id*. at 602 (internal quotation omitted).

The district court here imposed the standard conditions of probation, which *Gall* described as a "substantial restriction of freedom," *id*. at 595, and added a special condition requiring Lehmann to serve six months in community confinement. In explaining its decision not to impose a term of imprisonment, the district court accepted expert testimony that sending Lehmann to prison would have a very negative effect on the emotional development of her young son, which is not materially different from the sort of "compelling family circumstances" that the Supreme Court indicated would justify probation for a drug trafficker with a similar advisory guidelines range. *Id*. at 602. Given the impermissibility of "proportionality" review, and the requisite deference due to the district court, we cannot conclude that the

sentence imposed was substantively unreasonable in light of § 3553(a) and *Gall*. *See Gall*, 128 S. Ct. at 597 ("The fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court"). Accordingly, the judgment is affirmed.

_____