# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-2832

_____

Ronald Hernandez

*Petitioner*

v.

Eric H. Holder, Jr.

*Respondent*

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: April 16, 2014
Filed: July 28, 2014

_____

Before LOKEN and MURPHY, Circuit Judges, and LIMBAUGH,[1] District Judge.

_____

MURPHY, Circuit Judge

Ronald Hernandez entered the United States illegally in 1989, and was placed in removal proceedings in 2003. His requests for asylum, cancellation of removal under the Immigration and Naturalization Act (INA), special cancellation of removal

_____

[1]The Honorable Stephen N. Limbaugh, Jr., United States District Judge for the Eastern District of Missouri, sitting by designation.

under the Nicaraguan Adjustment and Central American Relief Act (NACARA), withholding of removal, and protection under the Convention Against Torture (CAT) were denied by an immigration judge (IJ). The IJ concluded that his 1989 conviction for grand theft auto was an aggravated felony making him ineligible for asylum, cancellation of removal, and special cancellation of removal. She also concluded that Hernandez was not credible and had failed to meet his burden of proving his withholding of removal and CAT claims. The Board of Immigration Appeals affirmed the immigration judge's decision. Hernandez seeks review, arguing that the IJ and the Board erred by determining that his 1989 conviction was an aggravated felony and that he was not credible. We deny the petition.

I.

Ronald Hernandez illegally entered the United States in 1989 from his native El Salvador under the name Jaime de Jesus Huezo. In June 1989 he pled guilty to grand theft auto in California. He was sentenced to three years probation with the condition that he spend the first 365 days in county jail. The sentencing form used by the court shows the presiding judge crossed out the words "Sentenced Imposed as Follows" and checked a box next to "Proceedings Suspended." The box for "Probation Granted for a Period of Three Years" was checked, and the box for "Sentence Is Suspended" was not.

Hernandez was deported immediately following his sentencing so that he was unable to check in with his probation officer as required under the terms of his probation. He reentered the United States later that year under his birth name, Ronald Hernandez, and was granted temporary protected status in 1990. Hernandez was arrested and sentenced to probation in 1991 for stealing cough medicine for his family and again in 1994 for stealing shoes for himself. Hernandez was later arrested in 1998 after neighbors called police to report an argument between him and his wife. Despite his wife's statement to police that he had not hit her, Hernandez pled guilty

to battery. His conviction led to the discovery of his 1989 probation violation, and his probation was revoked. The court then reinstated his probation with the additional condition that he serve 180 days in jail, of which he served 110 days. His record contains no other arrests or convictions.

In 1994, Hernandez filed a second application for asylum in which he claimed his father had been killed in 1985. Later in 2000 an application for special cancellation of removal stated that his father had died in 1972. Hernandez was placed into removal proceedings in December 2003, and in March 2004 he conceded his removability before an immigration judge. The venue of these proceedings changed from California to Missouri when Hernandez moved his family from Los Angeles to Kansas City. Subsequently, Hernandez conceded to a second charge of removability in a 2007 hearing. He then requested asylum, cancellation of removal under the INA, special cancellation under NACARA, withholding of removal, and protection under CAT. The IJ ordered Hernandez removed in April 2009, concluding that he was ineligible for asylum, cancellation of removal, and special cancellation of removal, and that he had failed to meet his burden for withholding of removal or CAT protectiont.

Hernandez appealed the decision to the Board in August 2009, asserting errors in the hearing transcript. The Board remanded with instructions to correct the errors. The IJ held a new merits hearing in November 2010. At that hearing, Hernandez testified that he was born in El Salvador in 1968 and that his father had been killed by the army or government because of his alleged association with forces opposing the government. Hernandez said that he could not remember the exact date of his father's death, but he believed that it occurred when he himself was "around 13, 14" years old. He testified that death threats were pushed under the door of his home for some time after his father's death and that his mother died a short time later of depression and grief.

Hernandez testified that following the death of his parents and the threats, he sought protection by moving in with a family in El Salvador called the Huezos. The Huezos provided Hernandez with a new birth certificate bearing a new identity: Jaime de Jesus Huezo, born March 30, 1970. Hernandez said he continued to receive death threats at his new home and eventually fled El Salvador for the United States when he was around 19 years old. Hernandez admitted to entering and being deported from the United States under the name Jaime Huezo. He explained that following deportation he reentered the United States under his birth name because "[t]here was an opportunity to go under . . . temporary protection for Salvadorans [and] I figured it would be best to do it under my real name." His wife testified that Hernandez first came into the United States under the Huezo name because that family had been helping him and that he reentered under the Hernandez name because he had finally obtained possession of his original birth certificate. Both of his birth certificates were submitted into evidence, as were his marriage certificate and the birth certificate of his daughters, both United States citizens. The last name of all persons identified in the certificates is "Huezo."

Hernandez was asked under cross examination whether he was "ever harmed in El Salvador prior to . . . coming to the United States for the first time." He answered that the only time was when he was "about 12 maybe, 13." He "was arrested for a few days and . . . not physically abused but they were pointing the rifles at me and threatening to kill me if I didn't tell them what they wanted to hear." When he was asked whether he reported this incident in any of his asylum applications, he replied that "I guess I blocked it out. I didn't think it was relevant to anything." During the hearing, Hernandez provided the death certificate of a person he claimed was a relative, as well as an article about him and numerous articles on gang violence in El Salvador.

At the conclusion of the hearing the IJ determined that Hernandez was ineligible for asylum, cancellation of removal, and special cancellation of removal

because of his 1989 conviction for grand theft auto. She concluded that because he had received a "suspended sentence of 365 days in jail and three years of probation" as punishment for the offense, the conviction was an "aggravated felony" under 8 U.S.C. § 1101(a)(43)(G), barring him from receiving the requested relief. She found that Hernandez was not credible due to the inconsistent dates he gave for his father's death, the fact that he reentered the United States under a different name following his deportation in 1989, and his failure to include the fact of his arrest in El Salvador on his asylum applications in 1994 and 2000. The IJ concluded that Hernandez failed to provide corroborating evidence sufficient to overcome his lack of credibility and that even if he had been credible his claims for asylum, withholding of removal, and CAT would have failed. The IJ then denied all his claims, and ordered his removal from the United States. Hernandez appealed to the Board, which adopted the IJ's findings and conclusions.

Hernandez now files this petition for review, arguing that the Board erred in determining that he is ineligible for asylum, cancellation of removal, and special cancellation of removal. He asserts that his 1989 conviction was not an aggravated felony and that he is eligible for asylum even if it was. He also challenges the IJ's adverse credibility determinations.

II.

Decisions by the Board are reviewed as the final decision of the agency. Lateef v. Dep't of Homeland Sec., 592 F.3d 926, 929 (8th Cir. 2010). We review Board conclusions of law de novo, deferring to its interpretation of immigration statutes and regulation, id., unless it is "contrary to unambiguous statutory language." Cuadra v. Gonzales, 417 F.3d 947, 950 (8th Cir. 2005) (citing Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843–45. If a statute is ambiguous with respect to a specific question, "the question for the court is whether the agency's answer is based on a permissible construction of the statute." Chevron, 467 U.S. at 843.

Although "[j]udicial review is generally precluded in cases involving aliens who are removable as aggravated felons[,] . . . we retain jurisdiction to review constitutional claims or questions of law . . . including whether a crime is an aggravated felony." Armenta-Lagunas v. Holder, 724 F.3d 1019, 1021 (8th Cir. 2013) (internal quotation marks and citations omitted).

The starting point for a review of the Board's statutory interpretation is the language of the statute itself. An alien who has been convicted of an "aggravated felony" is ineligible for asylum, 8 U.S.C. §§ 1158(b)(2)(A)(ii), 1158(b)(2)(B)(i), cancellation of removal under the INA, 8 U.S.C. § 1227(a)(2)(A)(iii), and special cancellation of removal under the NACARA, 8 C.F.R. § 1240.61(b). An "aggravated felony" includes "a theft offense . . . for which the term of imprisonment [sic] at least one year." 8 U.S.C. § 1101(a)(43)(G). Hernandez concedes that his 1989 conviction is a theft offense, but he nevertheless contends that it is not an aggravated felony because he was not sentenced to a term of imprisonment of at least one year. He argues that California's sentencing system gave the judge a choice either to sentence him to imprisonment and suspend the sentence in favor of probation or to sentence him directly to probation. Since the judge opted to place Hernandez on probation directly, he maintains he was sentenced to probation and not to a "term of imprisonment."

We have determined that the phrase "term of imprisonment" in § 1101(a)(43)(G) is "clarifie[d]" by § 1101(a)(48)(B). United States v. Demirbas, 331 F.3d 582, 584 (8th Cir. 2003) (citing United States v. Tejeda-Perez, 199 F.3d 981, 982 (8th Cir. 1999)). Section 1101(a)(48)(B) states that:

> Any reference to a term of imprisonment or a sentence with respect to an offense is deemed to include the period of incarceration or confinement ordered by a court of law regardless of any suspension of the imposition or execution of that imprisonment or sentence in whole or in part.

-6-

8 U.S.C. § 1101(a)(48)(B). Hernandez concedes that the definition in § 1101(a)(48)(B) is broad, but contends that it applies to the more general term "conviction" appearing in the INA, rather than to "term of imprisonment" in § 1101(a)(43)(G). This contention is meritless because "courts that have considered the issue agree that 8 U.S.C. § 1101(a)(48)(B) . . . applies for the purpose of defining 'term of imprisonment'" as it is used in § 1101(a)(43)(G). Tejeda-Perez, 199 F.3d at 982.

The definition given to "term of imprisonment" by § 1101(a)(48)(B) broadens the meaning of the phrase in three ways. First, it indicates that the phrase does not refer only to imprisonment as such, but also more generally to any "sentence with respect to an offense." It also explains that this general definition includes any "period of incarceration or confinement ordered by a court of law." Finally, it provides that the relevant fact for determining a "term of imprisonment" is the period of incarceration or confinement originally ordered since any suspension of the "imposition or execution of that imprisonment or sentence" is to be disregarded. A California court sentenced Hernandez to 365 days incarceration in county jail. Since there is nothing in the statutory text to indicate that Congress intended to exclude periods of incarceration ordered as a condition of probation from the definition of "term of imprisonment," we conclude that the Board did not err in determining that Hernandez was sentenced to a "term of imprisonment of at least one year."

Hernandez claims several authorities contradict this conclusion. First, he refers to our opinion in United States v. Lehmann, where we stated that the Supreme Court has viewed probation as "'not merely a reduced sentence, but a different type of sentence altogether.'" 513 F.3d 805, 808–09 (8th Cir. 2008) (quoting United States v. Soperla, 494 F.3d 752, 756 (8th Cir. 2007)). The subject under consideration in Lehmann was the place of probation in the United States Sentencing Guidelines. We observed that the Court "emphasized" in Gall v. United States that "'offenders on probation are subject to several standard conditions that substantially restrict their

liberty.'" Lehmann, at 809 (quoting Gall, 552 U.S. 38, 48 (2007)). We subsequently decided that it was substantively reasonable for a district court to sentence a defendant to six months community confinement as a condition of probation instead of the 37 to 46 month "term of imprisonment" recommended by the guidelines. Lehmann, 513 F.3d at 809. Even if this reading of the sentencing guidelines were to affect our reading of § 1101(a)(48)(B), it would tend to support the view that probationary jail time is included in the definition of "term of imprisonment." If six months' confinement in a halfway house is sufficiently restrictive to serve as a substantively reasonable alternative to a 37 to 46 month prison sentence, then there would seem to be little ground for arguing that a year's incarceration in county jail should be treated differently than the same period of incarceration in state prison.

Hernandez next cites decisions by the Eleventh, Tenth, and Fifth Circuits, which he asserts have concluded that "aggravated felony" excludes offenses where the offender was sentenced directly to probation, without any prison sentence first being imposed and then suspended. See United States v. Guzman-Bera, 216 F.3d 1019 (11th Cir. 2000); United States v. Gonzalez-Coronado, 419 F.3d 1090 (10th Cir. 2005); United States v. Mondrago-Santiago, 564 F.3d 357 (5th Cir. 2009); United States v. Banda-Zamora, 178 F.3d 728 (5th Cir. 1999). Notably, however, Hernandez was sentenced to serve jail time as a condition of probation, while the offenders in the cases Hernandez cites were originally sentenced to probation with no jail time at all. Guzman-Bera, 216 F.3d at 1020 (five years probation, no jail time); Gonzalez-Coronado, 419 F.3d at 1092 (one to five years probation, no jail time); Mondragon-Santiago, 564 F.3d at 359 (four years deferred adjudication probation, no jail time); Banda-Zamora, 178 F.3d at 729 (ten years probation, no jail time). These cases therefore do not contradict the conclusion that a probationary jail sentence is a "term of imprisonment."

Hernandez argues that in United States v. Dowling, 962 F.2d 390 (1992), the Fifth Circuit did decide that probationary confinement is not a "term of

imprisonment." Although Dowling discussed whether confinement in a halfway house as a condition of probation is a "term of imprisonment," that case is legally and factually distinguishable from the one before this court. The issue in Dowling was whether probation, "no matter how severe the conditions imposed on the offender," could be considered a "term of imprisonment" for purposes of determining the amount of presentence detention credit due under 18 U.S.C. § 3585(b). Id. at 392. The Fifth Circuit concluded it could not, but only because a "necessary condition to obtain" such credit "is that the offender must first exhaust his administrative remedies before the Bureau of Prisons." Id. at 393. Since the Bureau of Prisons does not supervise probation, a probationer cannot exhaust his or her remedies before the Bureau, and thus would not be eligible for credit under § 3585(b). Id. No such administrative considerations are present in this case.

Finally, Hernandez contends that the Board itself decided in Matter of Patel that confinement in county jail as a condition of probation is not a "term of imprisonment." In Patel, the Board considered the same California system under which Hernandez was sentenced, acknowledging that it "provides for alternative sentences of imprisonment either in the state or the county jail." 15 I & N Dec. 212, 213 (BIA 1975). The offender in that case had been sentenced to "imprisonment in the State Prison," with the execution of the sentence suspended and the offender placed on three years probation with six months confinement in county jail as a special condition. Id. at 213–14. The issue there was whether his offense fell under the petty offense exception to the "crime of moral turpitude" bar against voluntary departure. Id. at 213. The INA at the time defined "petty offense" in terms of "'the punishment actually imposed.'" Id. (quoting the INA § 212(a)(9)). The Board concluded that imprisonment in state prison was the "punishment actually imposed," not incarceration in county jail as a condition of probation. Patel, 15 I & N at 214.

Congress has amended the INA so that the statutory definition of "petty offense" now depends on the "sentence actually imposed" rather than the

"punishment." Matter of Castro, 19 I & N Dec. 692, 694 (BIA 1988). Even read with this new definition, Patel does not contradict the plain meaning of § 1101(a)(48)(B), and it is distinguishable from Hernandez' case. First of all, Patel concerned the meaning of "punishment actually imposed" for the purpose of determining whether a conviction was a "petty offense," whereas this case concerns the meaning of "term of imprisonment" for the purpose of determining whether a conviction is an "aggravated felony." The Board in Patel also considered whether the "punishment actually imposed" was the prison sentence subsequently suspended in favor of probation. It did not consider whether a probationary jail sentence imposed without a suspended prison sentence would be the "punishment actually imposed."

Hernandez argues in the alternative that even if his probationary jail sentence was a "term of imprisonment," it was for less than a year because it was modified to 180 days following his guilty plea to battery in 1998. He cites several cases from various circuits for the proposition that a sentence imposed following a revocation of probation is the sentence imposed for the purposes of § 1101(a)(43)(B). We need not examine these cases, however, because we may not address the argument Hernandez asserts they support. Neither his brief to the Board nor its decision expressly address this issue, and we lack jurisdiction to consider an issue not raised on appeal before the Board. See Martinez Carcamo v. Holder, 713 F.3d 916, 925 (8th Cir. 2013) (citing 8 U.S.C. § 1252).

Hernandez also asserts that the BIA erred by determining that the aggravated felony bar applied to his asylum claim. The INS added a regulation in October 1990 which made persons illegally present in the United States ineligible for asylum if previously convicted of a "particularly serious crime." 8 C.F.R. § 208.13(c)(2)(i)(A). Federal statute had already established that an "aggravated felony" is a "particularly serious crime." 8 U.S.C. § 1158(b)(2)(B)(i). Citing a Ninth Circuit opinion, Kankamalage v. INS, 335 F.3d 858 (9th Cir. 2003), Hernandez asserts that the "particularly serious crime" regulation was not expressly made retroactive by

Congress or the Attorney General. Thus, even if his 1989 conviction was an aggravated felony, Hernandez asserts that aggravated felonies did not become a "particularly serious crime" barring individuals from asylum until 1990. He contends that the BIA therefore impermissibly applied the aggravated felony regulation retroactively to his 1989 conviction.

Statutes are presumed not to apply retroactively "absent a clear indication from Congress that it intended such a result." INS v. St. Cyr, 533 U.S. 289, 316 (2001). The Immigration Act of 1990 established a bar to asylum for people with aggravated felony convictions. See 8 U.S.C. § 1158(b)(2)(A)(ii). One year after the Act's enactment, Congress passed the Miscellaneous and Technical Immigration and Naturalization Amendments of 1991 (MTINA), which amended the Immigration Act so that the aggravated felony bar would apply "to convictions entered before, on, or after the date of the enactment of this Act and to applications for asylum made on or after such date." Pub.L. No. 102–232, 105 Stat. 1733. The Sixth Circuit noted that three circuits have concluded that Congress clearly intended to make this amendment retroactive, while two others have decided the statute is ambiguous but have deferred to the Board's interpretation that it is retroactive. Mossaad v. Gonzales, 244 Fed. Appx. 701, 704 nn. 1–2 (6th Cir. 2007) (surveying cases). No circuits have determined that the aggravated felony bar is not retroactive. Id.

We join those circuits concluding that Congress intended the aggravated felony bar to apply to convictions received before the enactment of the MTINA in 1991, and we conclude further that it thus applies to Hernandez' 1989 conviction. We note that the Ninth Circuit decision in Kankamalage concluded only that the aggravated felony bar regulation, 8 C.F.R. § 208.13(c)(2)(i)(A), is not retroactive. See Mossaad, 244 Fed. Appx. at 705 n.3. It did not address whether the statute is. Id. On this point, the Ninth Circuit had already concluded before Kankamalage that the MTINA demonstrated Congress' intent "that a party convicted of an aggravated felony is precluded from obtaining political asylum, regardless of the date of conviction."

-11-

Feroz v. INS, 22 F.3d 225, 227 (9th Cir. 1994). We thus conclude that the BIA did not err in applying the aggravated felony bar to his 1989 grand theft auto conviction.

Finally, Hernandez challenges the IJ's adverse credibility determinations, arguing that but for those errors, he would have been entitled to withholding of removal and protection under CAT. The United States argues that we lack jurisdiction to review the IJ's adverse credibility determinations. To be sure, an IJ's "findings of fact, including findings on credibility, are generally 'conclusive,'" so long as they are supported by "'a specific, cogent reason for disbelief.'" Lybesha v. Holder, 569 F.3d 877, 881 (8th Cir. 2009)(quoting Al Milaji v. Mukasey, 551 F.3d 768, 772 (8th Cir. 2008)).

We nevertheless decline to address Hernandez' adverse credibility claims on mootness grounds. An issue is moot when it becomes "impossible for a court to grant any effectual relief whatever to the prevailing party." Chafin v. Chafin, 133 S. Ct. 1017, 1023 (2013) (internal quotation marks omitted). Both the IJ and the Board decided that even if Hernandez were credible, he would fail to show the required elements for withholding of removal and protection under the CAT. Hernandez devoted considerable space in his brief to contesting the IJ's credibility determinations, but none to arguing errror by the IJ and BIA in concluding that he would not be entitled to relief even if he were credible. Since arguments not raised in an initial brief are waived, see DISH Network Service L.L.C. v. Laducer, 725 F.3d 877, 883 (8th Cir. 2013), Hernandez provides no argument for reversing this conclusion if we were to determine that he is credible. Because it would be impossible to grant him relief were we to decide this issue in his favor, we conclude it is moot.

-12-

## III.

Because the 365 day jail sentence Hernandez received was a "term of imprisonment of at least one year," we conclude the Board did not err in determining that his 1989 conviction for grand theft auto was an aggravated felony which made him ineligible for cancellation of removal and special cancellation of removal. The BIA also did not err in deciding that the aggravated felony bar also applied to his Hernandez' asylum claim. We further conclude that the Board did not err in denying Hernandez' applications for cancellation of removal and protection under the CAT. Since Hernandez raises no argument for reversing the Board's decision to deny his applications were we to find the IJ's adverse credibility determinations were in error, he waives his right to such forms of relief. The question of whether the IJ's credibility determinations were erroneous is therefore moot. The petition for review is accordingly denied.

_____